24 So.2d 20

## HALL v. STATE.

4 Div. 391.

Supreme Court of Alabama.

Dec. 6, 1945.

Lee J. Clayton, of Clayton, and Archie I. Grubb, of Eufaula, for appellant.

264

Wm. N. McQueen, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

BROWN, Justice.

The defendant, appellant here, was indicted, tried and convicted of the offense of murder. The indictment charging that he "* * * unlawfully, and with malice aforethought, killed Ethel Luck by forcibly drowning her". The sentence imposed on the defendant was death by electrocution. The appeal here is under the automatic appeal statute. Code of Alabama 1940, Title 15, § 382; Acts, 1943, p. 218, sec. 2, Code 1940, Tit. 15, § 382(2).

Two questions are argued on this appeal. The first is that there was not sufficient proof of the corpus delicti to justify the admission in evidence of the confession made by the defendant. And, that the voluntary statement of the witness Boyd that defendant in the course of his confession admitted that he ravished the deceased twice during the time he had her in his power was not admissible testimony, and was so prejudicial that the exclusion of this testimony was inadequate to eradicate its prejudicial effect. In substance, the insistence here is that its effect was ineradicable.

The undisputed evidence offered by the State goes to show that the deceased was a comely young woman, eighteen years of age, and worked at the cotton mill in Eufaula on the midnight shift, going to work at 11:30 p. m., and off duty at 6:30 a. m. That she lived a mile or more from her place of work, and traveled night and morning along the road by one Culpepper's residence, passing an old vacant house between Culpepper's and her home. This was a daily occurrence. That on the morning of July 4, 1945, she left her place of work dressed in a grey dress, carrying her purse which contained cosmetics, some kodak photographs of the members of her family, including her mother, her sister and her sister's beau, a soldier overseas, her own photograph and the photograph of her soldier sweetheart. That the witness Culpepper, a coworker, accompanied her to the Culpepper home, and she proceeded on her way toward the vacant house which was situated about half way between the Culpepper home and the home where the deceased lived with her father and mother. That about 7 o'clock, a. m., the father and mother heard her screams in the location of the vacant house, as near as they could tell, and the father immediately went to her rescue but failed to find her, or anyone else in that locality. He gave the alarm, a posse was formed and search made, and near the old vacant house they found shoe tracks of a man and a woman. The tracks of the man being made, according to the testimony, by everyday shoes. The State's witness Harry McCullough, who examined the tracks made near the point where the screaming was supposed to have taken

place, stated he "saw a man's shoe and the track of a woman's shoe, and apparently they were running and they went to the top of the little hill there and then we found this disturbed place there in the middle of the road like there had been scuffling in the road". He further stated that they picked up the trail in the woods where the weeds and grass and underbrush were mashed down and traced this for considerable distance leading in the direction where the body of the deceased was found the day following; and on this course of passage a torn part of her dress was found and was identified by a witness who saw her and accompanied the deceased on her way home that morning. The body of the deceased was finally found in a pool of water made by a stream about a mile distant from the old vacant house. On the bank, or near the pool, similar tracks of a man and woman were found in the sand bar. The body when found was lying in the water face up, the torso and lower limbs submerged, the knees, one arm, breast and face just out of the water. The body was nude from the waist down. Photographs of the body were taken by the mortician, who afterwards prepared the body for burial, before it was touched or removed from the water. On the side of the bank was another disturbed place where the grass and weeds were mashed down. The water in which the body was found was a little above knee-deep. The contents of her purse was found some distance from where the body was found, buried at the root of an oak tree. The witness Jackson, the mortician, testified: "There were five small bruises around the right corner of the eye. There were very distinct bruises on top of the left breast. There were two distinct bruises on the lower side of the left breast. There was one large bruise about one and one-half inches in diameter on the outside of the left thigh, six inches from the left hip joint. There was a very definite frothy purge from the lungs with a small amount of blood. Multiple bruises inside right biceps muscle, upper right arm. There were nine distinct bruises back side of upper left arm. One very distinct bruise about the size of normal thumb three inches below left shoulder on outside of left arm. Four distinct lacerations at entrance to vagina. Some bleeding present, and the legs were covered with some form of weed seeds, such as is commonly known as beggar lice. There were no bruises on the throat or neck and no bruises on the lower limbs." The testimony of the toxicologist, offered by the State, was that the frothy purge from the lungs indicated that death was caused by drowning. When defendant was arrested before the body was discovered there was found under his bed a pair of brogan water soaked shoes, and when asked how his shoes became wet he stated that he went in swimming.

 Proof going to show that death resulted from force unlawfully applied is all that the law requires as a predicate for the introduction of the confession voluntarily made: Vernon v. State, 239 Ala. 593, 196 So. 96; Simmons v. State, 16 Ala.App. 645, 81 So. 137; Shelton v. State, 217 Ala. 465, 117 So. 8; Jordan v. State, 225 Ala. 350, 142 So. 665. The appellant's contention therefore that there was not sufficient proof of the corpus delicti is without merit. The testimony shows without dispute that the confession made by the defendant to the effect that he caused the death of the deceased by holding her head under the water in the pool, where he carried her, until she quit kicking was voluntary and properly received in evidence. As a consequence of the confession the body was discovered. The contents of the purse of the deceased, which defendant in his confession stated was buried by him, was located from a diagram which the defendant furnished to the warden of the penitentiary. The contents of the purse being the photographs of the deceased, her sweetheart, her mother, her sister and her sister's sweetheart, a soldier overseas, and the stub of her last check which she received for working at the cotton mill showing the amount of her earnings for the week, powder puff, comb, pencil, lipstick and other articles usually carried by women.

 Where the defendant's confession or inculpatory admission in the nature thereof leads to the discovery of physical facts which establish the truth of the confession, so much of the confession as leads to the facts thus discovered is admissible along with proof of these facts. Murphy v. State, 63 Ala. 1; Spicer v. State, 69

Ala. 159; Whitehead v. State, 16 Ala.App. 427, 78 So. 467, and authorities there cited.

The defendant's voluntary confession shows that he intercepted the deceased near the old vacant house, and he kept her within his power through force from 7 o'clock, a. m., until 1 o'clock, p. m., July 4, 1945, and eventually drowned her by holding her head under the water until she quit kicking. From the time the deceased was intercepted and overpowered by the defendant until she was drowned was one continuous criminal transaction, and the testimony going to show that defendant stated that during that time he was "with" the deceased twice was of the res gestae of the murder, shedding light on, and furnishing motive for the cruel and inhuman destruction of the deceased. Miller v. State, 130 Ala. 1, 30 So. 379. The defendant, appellant here, certainly has not ground to complain that the Court on the suggestion of the solicitor that that part of the confession was not called for excluded it and instructed the jury not to consider it, even though it left its impression upon the minds of the jury. That part of the confession was competent evidence, as well as the other.

The testimony of the witness Dr. Rehling, the toxicologist, and witness Jackson, the mortician, shows that they each through education, practice, investigation and experience possessed knowledge in respect to the matters given in evidence by them not possessed by the ordinary layman. Dr. Rehling was a competent witness to testify that the frothy purge from the lungs found on the nostrils and mouth of the deceased showed that death was caused by drowning. And, Jackson, the mortician, who examined the body before its removal from the water was competent to testify that this frothy purge was on the nostrils and mouth of the deceased at the time the body was discovered. Sovereign Camp W.O.W. v. Screws, 218 Ala. 599, 119 So. 644; Thaggard v. Vafes, 218 Ala. 609, 119 So. 647.

We have given due consideration to the record and proceedings of the Circuit Court and find that the testimony in the case abundantly supports the verdict. The record is free from reversible error, and is due to be affirmed. It is so ordered by the Court.

Affirmed.

All the Justices concur.