46 So.2d 564

**SIMS v. STATE.**

**6 Div. 999.**

Supreme Court of Alabama.

June 1, 1950.

Matt Murphy, Jr., of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Jas. T. Hardin, Asst. Atty. Gen., for the State.

FOSTER, Justice.

The question on this appeal is the identity of appellant as the one who killed deceased by shooting him. Deceased was a watchman and the shooting was without provocation. Besides his confessions made to several different persons, there was further proof of the identity of his finger prints made after his arrest with some made of him on a former occasion. There is no question raised as to the competency of the witness taking the finger prints and explaining them. See, Leonard v. State, 18 Ala.App. 427, 93 So. 56.

During the examination of the witness, State's counsel asked him questions in respect to finger prints formerly made of defendant. The following occurred during such examination:

"Q. Have you the known finger prints there? A. Yes, sir.

"Q. Is this (photograph) the known finger prints of Claude B. Sims? A. Yes, sir."

Objection was made to this by defendant's counsel because it had not been shown how he knew they were the defendant's finger prints. No ruling was made on this objection.

The State's counsel then asked: "Q. Tell us how you know that to be the known finger prints of Claude B. Sims? A. On four, thirty, forty-seven Claude B. Sims was arrested for burglary and grand larceny."

Objection was made by defendant's counsel and a motion was made to exclude. Thereupon the State's counsel asked that it be excluded. Defendant's counsel then moved for a mistrial because the statement of the witness was highly inflammatory. The court granted the motion of State's counsel and stated "that part of the statement which the witness made goes out. I exclude it and it should not be considered."

During the further examination of the witness, the question was asked by the State's counsel: "Were these photographs taken at the time you took those finger prints?" Answer: "That also was done on the first arrest. When it is done one time it carries the same number all the way through: both of them are on file."

Defendant's counsel asked for a mistrial on the ground that the statement of the witness as to the first arrest was unlawful and should not have been made. The court overruled the motion for a mistrial and in-

structed the jury that they should not consider the statement made by the witness that defendant had been arrested for an alleged crime before this offense is alleged to have been committed, and charged them that they should give no consideration to that statement.

Counsel for appellant insists that there was reversible error in the refusal of the court to grant a mistrial on account of the injection into the evidence of the fact of a former arrest of the defendant. We observe however that the former arrest came out incidentally, not in response to a question which directly called for it, and was by reason of an objection made by defendant's counsel that the so-called known finger prints of the defendant had not been shown to be his. The witness was merely stating the occasion when said so-called known finger prints were made. It is our view that evidence of that kind is merely incidental to the matter of the taking of his finger prints and showing the occasion for doing so, tending to show the identity of defendant with the finger prints then taken. The taking of defendant's finger prints at a certain time without any explanation for doing so would cast a reflection upon the fact that they were actually the finger prints of the defendant. But whether so or not, the State's counsel in one instance requested that such evidence be excluded and it was excluded. In another instance, the court excluded such testimony without the same being withdrawn by the State's counsel. In doing so the court was careful to instruct the jury that they should not consider the statement the witness made with respect to a former arrest of the defendant. It is our view there could be no prejudice resulting to him on account of that state of the record.

During the examination of the coroner, he was asked with reference to an alleged confession by defendant to him and, in detailing that confession, he stated that defendant shot the deceased with a thirty-two rifle, and that he and another boy had tried to hold up two more men before that and that he got away. Defendant's counsel objected to that statement of the witness and the solicitor immediately requested that "it go out as evidence" in the case, and stated to the witness to get down to the occasion of the defendant shooting John Harden, the deceased. Thereupon, defendant's counsel made a motion for a mistrial on the ground that it tended to inflame the minds of the jury. This motion was overruled, and defendant excepted. The witness then stated that the defendant told him that he hid the rifle down by the bedding factory and went over to the freight lines and saw Mr. Harden sitting in a rocking chair and asked him the way to Bessemer; that Mr. Harden showed him the way to Bessemer; and then he proceeded to tell how he shot Mr. Harden.

It is our view that there was no prejudicial error shown in this respect. Any reference to a former crime was immediately excluded, and we think it was not sufficient to justify a mistrial.

There were several confessions introduced in evidence upon proper preliminary proof being made that they were voluntary, some of them were in writing and some were verbal. Some of them contained a written statement of the questions to him and the answers given in respect to his conduct on the night when the deceased was killed. Being asked in detail as to what he did immediately preceding the shooting of the deceased, the following questions and answers were given:

"Q. About what time of night was that? A. Nine o'clock, somewhere around that.

"Q. Did you stay at home or leave? A. I left.

"Q. Did you take your rifle? A. Yes, sir.

"Q. Where did you go? A. Up by the mattress factory (this was shown to be near the place where the deceased was shot).

"Q. How long did you stay there? A. I stayed there a pretty good while. A boy got off the bus.

"Q. What happened then? A. I asked him for a cigarette and he said he did not have one and he ran. I started to shoot him and shot one time."

At this point the defendant's counsel objected to the last statement of the witness contained in said confession on the ground that it was not a part of the res gestae of the alleged offense on trial, and merely introduced to inflame the minds of the jury. The State's counsel responded by observing that he was reading the whole confession as it appeared. The court overruled the objection, with defendant's counsel excepting. Continuing with the confession, the State's counsel read as follows:

"Q. Did you hit him? A. No, sir.

"Q. In your best judgment, you did not hit him? A. No, sir.

"Q. What time was that? A. Along about twelve o'clock.

"Q. Close to midnight? A. Yes, sir.

"Q. What did you do then? A. Went to the transfer place?" (That was the place where the deceased was killed. The confession then proceeded to give the details given by defendant as to what occurred at that place and the fact of his killing the deceased.)

■ All the features of a confession are not necessarily admissible even though it is voluntary. We think a good statement of the rule is that if the confession indicates that accused has committed a separate offense it should be excluded by the court if its separation is possible, leaving the balance intelligible, unless it tends directly to prove accused guilty of the crime charged, or the motive for its commission, or where such part tends to explain the remaining portion of the confession. 22 Corpus Juris Secundum, § 820, p. 1441; Martinez v. State, 138 Tex.Cr.R. 51, 134 S.W.2d 276; Coomer v. State, 97 Tex.Cr. R. 100, 260 S.W. 568; People v. Rejno, 402 Ill. 84, 83 N.E.2d 327; Commonwealth v. Parker, 294 Pa. 144, 143 A. 904; People v. Hurry, 385 Ill. 486, 492, 52 N.E.2d 173, 176;

Hall v. State, 247 Ala. 263, 24 So.2d 20; Davis v. State, 168 Ala. 53, 52 So. 939; Smith v. State, 88 Ala. 73, 7 So. 52.

■ It is our view that what we have stated as a part of the confession made by defendant, that he shot at the boy one time when he ran, is so immediately connected with the circumstances of the shooting of the deceased with the same rifle that it is but an incident leading up to the occurrence itself. It is a statement made by the defendant himself and shows that at the time he was in a reckless, dangerous, malicious mood, and that was immediately preceding the killing of the deceased.

We have given careful consideration to the entire record in this case and have treated the matters discussed in brief for appellant. We find the record free from any effort to inflame the jury against the defendant or unduly prejudice them in any respect. The charge of the court was full and complete. There is no exception to it, and there were no charges requested by the defendant. There was no motion for a new trial made by defendant.

■ The record shows that all the requirements of the law and Constitution were observed and that defendant was represented by counsel of his own choice. The evidence was all carefully brought out in a legal manner. We find nothing prejudicial to the rights of appellant. It is therefore necessary to affirm the judgment of conviction. The time having expired when the execution of the judgment was required to be performed, it is necessary for us to set a new day for the electrocution of appellant. We therefore set July 21, 1950, as the date for execution.

Affirmed.

BROWN, LIVINGSTON, LAWSON, SIMPSON and STAKELY, JJ., concur.