[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1373 
Daniel Holsemback and his brother, Phillip, were separately indicted for the murder of Donald Joe Coleman. The indictments were consolidated for trial pursuant to A.R.Crim.P.Temp. 15.4 (b). A jury found both brothers guilty of murder and the trial judge sentenced each to a term of life imprisonment.
On the 11th of September, 1982, Phillip and his wife went to the Rainbow Inn in Oxford. Later, Daniel arrived with his date, Earlene Mayfield, and her niece, Connie Mitchell. The brothers sat at separate tables in different parts of the club and had only occasional contact with each other throughout the evening.
Sometime prior to the homicide, Phillip confronted Wayne Morgan in the men's restroom and told Morgan that he "didn't let nobody f___ with him." Phillip drew his knife. Morgan did likewise, and words were exchanged. At that time, the club bouncer "came in and broke up the scuffle", the cause of which was never established. A few minutes after Morgan had returned to his table, Phillip came over "just trying to fuss" and Morgan argued with him. The bouncer "came over and got" Phillip from Morgan's table. Morgan left shortly after this incident, but immediately before he left Phillip came over and Phillip, the bouncer, and Morgan apologized.
Shortly after one a.m., Joe Coleman entered the club. Ms. Mitchell, who was with Daniel and his date, kept calling Coleman over to their table. Seconds after Coleman had come to Daniel's table, Daniel and Coleman starting fighting and fell to the floor. When Daniel was pulled off Coleman, he had blood on his shirt. Daniel put a knife in his pocket and fled the club.
While Coleman was still on the floor, Phillip came from another part of the club, jumped on him and began hitting Coleman. The bouncer pushed Phillip off Coleman and Phillip fled the club stating, "You're lucky you ain't dead." Coleman had been cut or stabbed seven times. The cause of death was multiple stab wounds. Of the seven wounds, the "most rapidly fatal wound" went "in a different direction from the other wounds."
Phillip was arrested at 1:48 a.m. that morning. He had blood "all over him" and two knives were discovered on his person. He was taken to the Oxford City Jail and placed in a cell.
Later, Oxford Police Officer Danny Stewart returned to Phillip's cell and noticed the water running in the sink. Phillip turned from the sink, "wiping something on his shirt", and handed Officer Stewart a wet knife stating, "Don't you think you ought to take this?" On the knife and in the sink were faint traces of blood.
Phillip told the police that he did not cut anybody, stated that "Danny did the cutting", and said, "If you will let me get a hold of my brother, I'll make him tell you the truth."
After he fled the club, Daniel ran to the house of Shirley Herron. He told her that *Page 1374 
he had been in a fight with Coleman and tried to give her his knife. When Ms. Herron refused to take the knife, Daniel "laid the knife down on the stereo" and left.
Later that same night, he telephoned the police and turned himself in. He showed them the knife he used and gave a statement claiming that he only cut Coleman in self-defense.
 I
Both defendants argue that the court rule permitting consolidation of separately indicted defendants for trial is an abridgment of their substantive right to trial by jury and in violation of the constitution.
In Alabama, the rules governing joinder and consolidation are rules of court. Section 6.11 of Amendment 328 of the Alabama Constitution provides:
 "The supreme court shall make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts; provided, however, that such rules shall not abridge, enlarge or modify the substantive right of any party nor affect the jurisdiction of circuit and district courts or venue of actions therein; and provided, further, that the right of trial by jury as at common law and declared by section 11 of the Constitution of Alabama 1901 shall be preserved to the parties inviolate. These rules may be changed by a general act of statewide application."
This same power to make rules of procedure and practice is listed among the powers of the supreme court in Alabama Code Section 12-2-7 (1975). It is undisputed that the Legislature intended to grant the supreme court this authority, for Alabama Code Section 15-1-1 (1975) provides that the rules of criminal practice and procedure adopted by the Alabama Supreme Court shall take precedence over the statutes governing criminal procedure. Although the general rule is that a legislative enactment takes precedence over a court rule, Ex parte Foshee,246 Ala. 604, 21 So.2d 827 (1945), when the Legislature gives the court the power to make rules and the court acts, the rules become of "legislative origin in substance." Ex parte LeethNat. Bank, 251 Ala. 498, 38 So.2d 1 (1948).
Both defendants argue that the court rules of joinder and consolidation constitute substantive law and abridge their right of trial by jury at common law.
Alabama Code Section 15-14-20 (1975), over which A.R.Crim.P.Temp. 15 now takes precedence, provided the unqualified right to demand a separate trial by any defendant jointly indicted with another. This right of separate trial, at least where the indictment was joint, was granted by statute. Prior to the Code of 1886 in which the identical language of what is now Section 15-14-20 is initially found, the allowance of a separate trial was discretionary with the court. Andy v.State, 87 Ala. 23, 6 So. 53 (1889). Alabama Code Section 4892 (1876) provided: "When two or more defendants are jointly indicted, they may be tried, at the discretion of the court, either jointly or separately." This was also the rule at common law. Jackson v. State, 104 Ala. 1, 16 So. 523 (1894); Hawkinsv. State, 9 Ala. 137 (1846). See also Charley v. State,204 Ala. 687, 87 So. 177 (1920); Palmer v. State, 15 Ala. App. 262,73 So. 139, cert. denied, 198 Ala. 693, 73 So. 1001 (1916).
In this state, we have found only three cases which address the issue of the separate indictment of two defendants for the same offense and the right of a separate jury trial. Helums v.State, 23 Ala. App. 401, 126 So. 183 (1930), summarily held that, "Being separately indicted, the defendant is entitled to a separate trial, and a joint trial with another without the consent of the defendant or a waiver of the right by him appearing of record is error and cause for reversal. Martin v.State, 19 Ala. App. 432, 97 So. 768." Martin, without discussion or citation to authority, simply concluded that "(t)wo defendants indicted separately for the same felony shown by the evidence to have been committed jointly may consent to be tried together and a *Page 1375 
separate verdict may be returned in each case." With the same abrupt and conclusionary treatment, the court of appeals remarked in Taylor v. State, 20 Ala. App. 133, 134, 101 So. 93
(1924): "We know of no law which authorizes a consolidation of felony cases where the parties are not jointly indicted. . . ."
The only reason for this rule was found in J. Bishop, 2 NewCriminal Procedure, Section 1043 (2nd ed. 1913), wherein it was stated that the consolidation of separate indictments against separate defendants, with their trials together, "was deemed so burdensome as, though distinct verdicts were found, to render the proceeding erroneous." In T. Butler and M. Garsia, ArchboldCriminal Pleading, Evidence and Practice, Section 544 (35th ed. 1962), two English cases are cited for the rule that persons separately indicted cannot be tried together. One of these cases held that this matter was jurisdictional and defendants not jointly indicted could not be tried together even by consent. Dennis and Parker, 1 K.B. 867, 18 Crim.App. 39 (1924), relying on Crane, 15 Crim.App. 23 (1920), holding that the trial of two defendants separately indicted is void ab initio:
"The result is that there never has been a trial at all." 15 Crim.App. at 25.
Despite this authority to the contrary, we find that joinder and consolidation of defendants and indictments are procedural matters that do not ordinarily affect the substantive rights of the parties. The same issue was addressed by the Supreme Court of Massachusetts in Commonwealth v. Gallo, 275 Mass. 320,175 N.E. 718, 720-21 (1931), which held that the issue of joinder was procedural: "So far as concerns essentials in the ascertainment of truth and the administration of justice, a joint trial of two defendants on two separate indictments for one crime differs in no respect from a single trial of the same defendants joined in one indictment for the identical crime." See also M. McGee, Alabama Criminal Practice 178, n. 13 (1969) ("May several defendants charged by separate indictments be tried together in one proceeding? This seems permissible as long as a defendant does not object, there being no substantial difference between separate indictments and a joint indictment if the offenses charged are the same.").
In Gallo, the court dealt with the two English cases cited above and the apparently contradictory Alabama case of Taylor.
 "While there can be no impairment of constitutional guaranties, defendants charged with crime have no vested rights in matters merely procedural, bearing no vital connection with a real defense, fairly presented, based upon the merits. Traditional tenderness for persons accused of crime, having its origin in governmental, social and legal conditions far different from those now prevalent, cannot stand in the way of expeditious ascertainment of the facts, provided every substantial right of defendants be sedulously safeguarded. There seems to us no difference in sound principle under present conditions between requiring one defendant to proceed to a single trial upon separate indictments charging the same offense. Compare Lumiansky v. Tessier, 213 Mass. 182, 188, 189, 99 N.E. 1051, Ann.Cas. 1913E, 1049; Salinger v. Loisel, 265 U.S. 224, 229, 230, 44 S.Ct. 519 [521], 68 L.Ed. 989. We are therefore of opinion that there was no error in the joint trial of the two defendants.
. . . .
 "In Rex v. Crane, (1920) 3 K.B. 236, it was held by the Earl of Reading, C.J., speaking for the Court of Criminal Appeal, that the trial together of two prisoners separately indicted, one for receiving and the other for stealing certain skins was a nullity. On appeal sub nomine, Crane v. Public Prosecutor, (1921) 2 A.C. 299, 319, 320, 321, 331, 335, 336, the decision on this point was affirmed. Those decisions were followed in Rex v. Dennis, (1924) 1 K.B. 867, where a joint trial of two defendants separately indicted, one `for using' and the other `for having opened, kept or used' a house for a forbidden purpose, was held to be beyond the jurisdiction of the trial court. *Page 1376 
Those decisions may be distinguished from the case at bar on the ground that those were joint trials of different defendants separately indicted for distinct crimes, while in the case at bar each defendant was indicted for one and the same crime. The ground upon which those decisions are made to rest, although not much amplified, may be thought to be inconsistent with the conclusion here reached. If that be so, those decisions are incompatible with Commonwealth v. Seeley, 167 Mass. 163, 45 N.E. 91; Commonwealth v. Baldi, 250 Mass. 528, 146 N.E. 11; and Commonwealth v. Slavski, 245 Mass. 405, 140 N.E. 465, 29 A.L.R. 281. Few decisions in this country bearing on the point have come to our attention, and those are not by the highest courts. In none of them is there much discussion, but they do not appear to support the view we entertain. People v. O'Connor, 81 Cal.App. 506, 515, 519, 254 P. 630; Taylor v. State, 20 Ala. App. 133, 134, 101 So. 93. There is nothing contrary to the conclusion here reached in State v. Devlin, 25 Mo. 174, 176. The weight of all those decisions having a possibly contrary aspect is not minimized. We are constrained not to follow them because they are not in harmony with the principles underlying our system of criminal procedure as disclosed in the decisions of this court already cited."
Following Gallo, we conclude that the consolidation for trial of separate indictments against separate defendants is a matter of procedure and does not abridge the substantial right of an accused to a jury trial. Support for our conclusion is also found in Patton v. United States, 281 U.S. 276, 50 S.Ct. 253,74 L.Ed. 854 (1930), wherein the United States Supreme Court refused to "convert a privilege into an imperative requirement" and held that an accused could waive his constitutional right to a jury trial, notwithstanding the common law rule forbidding waiver. The court noted that a legislature may not destroy or abridge the common law elements of the constitutional right of trial by jury in a criminal case. The Sixth Amendment phrase "trial by jury" means "a trial by jury as understood and applied at common law, and includes all the essential elements as they were recognized in this country and England when the Constitution was adopted. . . ." Patton, 281 U.S. at 288,50 S.Ct. at 254.
 "Those elements were: (1) That the jury should consist of twelve men, neither more nor less; (2) that the trial should be in the presence and under the superintendence of a judge having power to instruct them as to the law and advise them in respect of the facts; and (3) that the verdict should be unanimous." Patton, 281 U.S. at 288, 50 S.Ct. at 254.
See generally C. Antieau, 1 Modern Constitutional Law, Section 5.60 (1969). Also Baader v. State, 201 Ala. 76, 77 So. 370
(1917).
"Joinder and severance is a procedural issue. . . ." 2 A.B.A. Standards For Criminal Justice, Chapt. 13, at 13.4 (2nd ed. 1982). "The consolidation of cases for trial is not jurisdictional, but merely procedural." 23 C.J.S. Criminal Law, Section 931 (1961). The consolidation of one defendant's case with that of another defendant is a matter of procedure.Hamilton v. North Carolina, 260 F. Supp. 632, 635 (E.D.N.C. 1966), affirmed, 382 F.2d 296 (4th Cir. 1967). Rules of joinder and consolidation are designed "to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." Daley v. United States, 231 F.2d 123, 125 (1st Cir.), cert. denied, 351 U.S. 964, 76 S.Ct. 1028, 100 L.Ed. 1484
(1956). Joint trials are "an accepted and even necessary aspect of our judicial system" and do not constitute a per se denial of due process. United States v. McLaurin, 557 F.2d 1064, 1074
(5th Cir. 1977). Since the rules of joinder, consolidation, and severance are procedural in that they regulate the manner in which an accused's substantive and constitutional right to a jury trial may be exercised, they are within the rulemaking power of our state supreme court. We find A.R.Crim.P.Temp. *Page 1377 
15 to be a proper and constitutional exercise of that power.
 II
A.R.Crim.P.Temp. 15.4 (b) provides that if two or more defendants are joined for purposes of trial, "(p)roceedings thereafter shall be the same as if the prosecution initially had been under a single indictment, information, or complaint." Rule 15.4 (h) provides that when defendants are tried jointly, in selecting the jury, the "district attorney shall strike first, and shall strike one (1) name from the list; then one (1) defendant shall strike one (1) name from the list; then the district attorney shall strike one (1) more name from the list; and then the next defendant shall strike one (1) name from the list." The rule makes it clear that the parties shall strike in a definite order; first the State, then one defendant, then the State, then the second defendant. If the defendants were separately indicted the rule provided that each shall have a turn "in the same order as the filing of the charges against them . . . unless they agree upon a different order."
A law changing the number of jury strikes in a criminal case is procedural and does not affect matters of substance. Haynesv. State, 424 So.2d 669, 670-72 (Ala.Cr.App. 1982), cited as proper authority in Ex Parte Cofer, 440 So.2d 1121 (Ala. 1983). See also Opinion of the Justices No. 229, 342 So.2d 361, 362
(Ala. 1977), holding that the "method of selecting juries in criminal cases, . . . is within the rulemaking power of the Supreme Court of Alabama as granted by the Constitutional provision quoted (Amendment 328, Section 6.11)."
In view of these authorities we find that the method of striking juries proved by A.R.Crim.P.Temp. 15.4 (h) where two or more persons are tried jointly is a constitutional exercise of the rulemaking power of the Alabama Supreme Court.
 III
Both defendants argue that, even if a consolidation were constitutionally permissible as part of the supreme court's rulemaking power, the consolidation in this particular case denied them a fair trial.
Daniel alleges that he was unduly prejudiced because of (1) the introduction of Phillip's statement, (2) the evidence of the confrontation between Phillip and Morgan in the restroom, and (3) the fact that Phillip elected not to testify in view of his prior criminal record.
Phillip argues that the joinder was prejudicial because of the admission of evidence of Daniel's "prior difficulties with the deceased and his cohabitation with females, not his wife." This evidence of prior difficulties and cohabitation was presented by Daniel to support his claim of self-defense.
The trial of multiple defendants carries "substantial risks of manifest unfairness." United States v. McLaurin,557 F.2d 1064, 1074 (5th Cir. 1977). "Inherent in every joint trial is, of necessity, some degree of bias. Only in the event such prejudice appears to be compelling does severance become warranted." United States v. Marszalkowski, 669 F.2d 655, 660
(11th Cir. 1982).
 "Although the risk of prejudice, either from the jury's perception of evidentiary spillover or transference of guilt, exists in any joinder of offenses or defendants, the trial court weighs that risk against the interest of judicial economy. In reviewing improper denial of severance claims, courts of appeals require that the defendant demonstrate that the trial court abused its discretion by showing that the failure to sever resulted in compelling prejudice. . . .
 "The defendant bears a difficult burden in attempting to show that joinder of defendants or charges created substantial or compelling prejudice. The defendant fails to meet this burden if he merely asserts that acquittal is more likely if he is tried in a separate action or that much of the prosecution's evidence relates to only one of the codefendants. Compelling prejudice requiring severance does not result when the evidence against the codefendant is more damaging than *Page 1378 
against the defendant, or when the prosecution introduces into evidence a codefendant's past criminal record or reputation. . . .
 "Severance may be required when codefendants' inconsistent defenses are prejudicial because they are mutually exclusive and irreconcilable or might mislead or confuse the jury. The defendant may demonstrate the level of antagonism requiring severance by showing that the jury had to disbelieve testimony offered in behalf of a codefendant in order to believe the core of evidence offered by the defendant. In determining whether prejudice resulting from jury confusion requires severance, courts focus on whether the jury reasonably could be expected to `compartmentalize' the evidence and charges against each defendant. Courts also consider the effectiveness of the jury instructions, the complexity of the case, and the total weight of evidence against each defendant."
 Twelfth Annual Review Of Criminal Procedure: United States Supreme Court And Courts Of Appeals 1981-1982, 71 Geo.L.J. 339, 494-98 (1983).
The test of whether a severance should be granted on the ground of prejudice to the defendants is whether under all the circumstances as a practical matter it is within the capacity of the jurors to follow the court's instructions and to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts. McLaurin, 557 F.2d at 1075. The trial judge must weigh the prejudice attendant to a joint trial against the interests of judicial economy. "Of necessity, this balancing process is committed in the first instance to the sound discretion of the trial judge, and an appellate court will not substitute its own judgment for that of the lower court absent an affirmative showing that the lower court has abused its discretion." McLaurin, 557 F.2d at 1075.
In view of the test and considerations set out above, we find no compelling prejudice materialized here.
We find no merit to Phillip's argument that he was prejudiced by the admission of testimony concerning Daniel's "prior difficulties with the deceased and his cohabitation with females, not his wife." At trial, Daniel testified that approximately two years ago he was living with Iona Johnson and that Coleman had broken in the house one night. Daniel stated that he pointed his pistol at Coleman at that time as Coleman ran out the door threatening to kill Daniel. The testimony also showed that Ms. Johnson was single during the time she lived with Daniel. When the testimony was given concerning these matters, Phillip's defense counsel made no objection and we do not think his inaction can now be criticized for the obvious reason that the worse Daniel looked the better Phillip appeared. Consequently, we have no difficulty in concluding that Phillip was not prejudiced by being tried with his brother. See Finch v. State, 81 Ala. 41, 1 So. 565 (1887) (where a confession of one defendant as to a former difficulty between himself and deceased is admitted against himself only, and properly limited by instruction, a codefendant cannot complain that its admission was prejudicial to him).
Although we also find that Daniel did not suffer any compelling prejudice, our determination of that issue with regard to Daniel is more involved. In Bruton v. United States,391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that the defendant's Sixth Amendment right to confrontation may be violated by introduction of a nontestifying codefendant's extrajudicial statement inculpating the defendant. Here, it is undisputed that Phillip told the police that Daniel stabbed Coleman, that this statement was admitted into evidence at trial, and that Phillip did not testify. However, it is also undisputed that Daniel did stab Coleman. The only issue as far as Daniel's defense was concerned was whether Daniel acted in self-defense.
At trial, neither Phillip nor Daniel objected to the introduction of Daniel's statement admitting the stabbing but claiming self-defense. *Page 1379 
Only after the prosecution had placed Daniel's confession before the jury were Phillip's statements introduced into evidence, and then without objection. Phillip's statements were short and very general: He told Officer Hill that Daniel did the cutting and that "if you will let me get a hold of my brother, I'll make him tell you the truth."
In Bruton, the Supreme Court specifically held that "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of Evans' confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." 391 U.S. at 126, 88 S.Ct. at 1622. The distinction between this case and Bruton is in the fact that inBruton the codefendant's confession "added substantial, perhaps even critical, weight to the Government's case in a form not subject to cross-examination." 391 U.S. at 127,88 S.Ct. at 1623. Bruton also recognized that "(n)ot every admission of inadmissible hearsay or other evidence can be considered to be reversible error. . . ." 391 U.S. at 135, 88 S.Ct. at 1627.
Here, although the admission of Phillip's extrajudicial statement incriminating Daniel was technically in violation of the Bruton rule, it constitutes only harmless error, even if its admission had been preserved for review.
Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726,23 L.Ed.2d 284 (1969), held that a Bruton error does not require reversal if the error was harmless beyond a reasonable doubt. In Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056,31 L.Ed.2d 340 (1972), the Court held that, in light of the overwhelming evidence of the defendant's guilt as manifested by his confession and the comparatively insignificant effect of the codefendant's confession, any Bruton error which may have occurred was harmless beyond a reasonable doubt. United Statesv. Halliday, 658 F.2d 1103, 1105 (6th Cir.), cert. denied, sub nom. Frank v. United States, 454 U.S. 1127, 102 S.Ct. 978,71 L.Ed.2d 115 (1981).
 "The Court held in Bruton that the admission of a confession of a codefendant who did not take the stand deprived the defendant of his rights under the Sixth Amendment Confrontation Clause, when that confession implicated the defendant. Even when the jury is instructed to consider the confession only against the declarant, the Court in Bruton determined that the danger of misuse of the confession by the jury was too great to be constitutionally permissible. . . .
 "The mere finding of a violation of the Bruton rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." Schneble, 405 U.S. at 429-30, 92 S.Ct. at 1058-59.
We do not consider the fact that Phillip's failure to testify, for whatever reason, constitutes a case of compelling prejudice against Daniel. Here, there is not even the allegation that at a separate trial Daniel would provide exculpatory evidence. See United States v. Dennis,645 F.2d 517, 521 (5th Cir.), cert. denied, 454 U.S. 1034,102 S.Ct. 573, 70 L.Ed.2d 478 (1981) (denial of severance improper when codefendant gave specific exculpatory testimony in chambers, which he would repeat only at a separate trial because of reluctance to expose his prior criminal record); United Statesv. Ruppel, 666 F.2d 261, 268-69 (5th Cir. 1982) (denial of severance proper when codefendant's possible testimony merely duplicates testimony already admitted and it is only "more likely" that codefendant would testify at separate trial);United States v. Grapp, 653 F.2d 189, 192-93 (5th Cir. 1981) (denial of severance proper when defendant merely speculated that codefendant more willing to give exculpatory testimony at *Page 1380 
separate trial); United States v. Perez, 648 F.2d 219, 223 (5th Cir.), cert. denied, sub nom. Ruiz v. United States,454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 388 (1981) (denial of severance proper when defendant failed to show likelihood that codefendant would testify at a separate trial).
 IV
Daniel's contention with regard to the joint trial issue that he was unduly prejudiced by the evidence of the confrontation between Phillip and Morgan in the restroom also requires the consideration of the issue raised by Phillip that the incident was not admissible against him.
The general rule is that "(i)n a homicide prosecution, `threats or hostile demonstrations by the accused toward persons not connected with the deceased are not admissible.'McGuff v. State, 49 Ala. App. 88, 91, 268 So.2d 868, 871, cert. denied, 289 Ala. 746, 268 So.2d 877 (1972)." Voudrie v. State,387 So.2d 248, 252 (Ala.Cr.App.), cert. denied, 387 So.2d 256
(Ala. 1980); Wiggs v. State, 24 Ala. App. 22, 129 So. 706
(1930); C. Gamble, McElroy's Alabama Evidence, Section 44.01 (1). In a prosecution for murder, "it is not permissible to show a difficulty between the accused and a third person not connected with the victim or the offense." Caylor v. State,353 So.2d 8, 10 (Ala.Cr.App. 1977), cert. quashed, 353 So.2d 11
(Ala. 1978). "The state is not allowed to supply the intent to kill one victim by showing that the defendant had assaulted a third party on another unrelated occasion." Caylor, 353 So.2d at 10.
However, Phillip's altercation with Morgan was properly admissible under a more specific rule to show his mental state at the time of the homicide. "(E)vidence of accused's commission of another crime of violence against a stranger to the victim, very close in time and place to the chargedhomicide, is admissible as tending to show that the defendant, at the time of the charged homicide, was in a reckless, dangerous or malicious mood." McElroy, Section 70.01 (12)(e) (emphasis added), citing Sims v. State, 253 Ala. 666,46 So.2d 564 (1950). See also Keith v. State, 253 Ala. 670, 46 So.2d 705
(1950). The evidence of the difficulty between Phillip and Morgan was admissible because it was connected with the offense. The altercation constituted a part of the chain of events and "need not be a part of the res gestae in the sense that these events became part of the crime itself, since they lead up to and tend to explain the acts, animus or intent of the defendant at the time he killed (the victim)," cf. Keith,253 Ala. at 675, 46 So.2d 705; and it was "so immediately connected with the circumstances" of the killing of the deceased with the same type weapon "that it is but an incident leading up to the occurrence itself . . . . and shows that at the time he was in a reckless, dangerous, malicious mood, and that was immediately preceding the killing of the deceased."Sims, 253 Ala. at 669, 46 So.2d 564. Consequently, we find that the altercation between Phillip and Morgan was admissible against Phillip.
On the issue of whether this evidence prejudiced Daniel to the extent that a severance was required, we find no compelling prejudice or prejudice sufficient to require a mistrial.
"(T)he fact that evidence may be admissible against one defendant but not against another defendant does not necessarily require a severance." United States v. Losada,674 F.2d 167, 171 (2nd Cir. 1982). "Severance will not be granted when the claim is based on the disparity of evidence adduced against individual defendants without a strong showing of prejudice. . . ." United States v. Mandel, 591 F.2d 1347, 1371
(4th Cir. 1979). The fact that the evidence is much stronger against one defendant than another is insufficient for a severance. United States v. Rasheed, 663 F.2d 843, 854 (9th Cir. 1981).
The trial judge carefully and repeatedly instructed the jury to consider the evidence against the two defendants separately and to consider the testimony of the altercation between Phillip and Morgan *Page 1381 
only as it pertains to the case of Phillip. The evidence against both defendants was "simple and straightforward enough for the jury to consider without any significant spillover effect." Losada, 674 F.2d at 171. Any claimed prejudicial spillover surely did not rise to the level of "compelling" or substantial prejudice in our opinion.
 V
Both Daniel and Phillip argue that their separate motions for judgments of acquittal should have been granted.
Daniel argues that "since the jury found that Phillip Holsemback stabbed the deceased and caused his death there was not proof that any wounds by Daniel caused the death of Donald Joe Coleman." Phillip argues that there was simply no evidence that he stabbed Coleman. Both of these contentions are without factual or legal support.
Daniel's argument is based on the false premise that two persons cannot be guilty of the same murder unless they were acting in concert. In this case there is no evidence of any mutual agreement between the defendants to kill Coleman; there was no evidence of joint participation in a common purpose. The trial judge did not charge the jury on conspiracy or on the liability of an accomplice.
"(I)f an offense is committed by one or more of them (persons), from causes having no connection with the common object, the responsibility for such offense attaches exclusively to its actual perpetrator." Stokley v. State,254 Ala. 534, 544, 49 So.2d 284 (1950). This principle is illustrated in the situation where two persons are jointly indicted and tried for murder, and the evidence shows that one fired the fatal shot, while the other cut the deceased with a knife during the difficulty. In that case, unless preconcert or community of action between the two defendants is shown, the latter is not guilty of murder unless the cut with the knife contributed to the death of the deceased. Jordan v. State,79 Ala. 9, 13 (1885). See also Winter v. State, 123 Ala. 1,26 So. 949 (1899); Williams v. State, 81 Ala. 1, 5, 1 So. 179 (1887);Frank v. State, 27 Ala. 37, 43 (1855).
The legal principle involved is covered in F. Wharton, TheLaw Of Homicide, Section 44 (1907).
 "Two persons acting independently may contribute to the death of another, so that each will be guilty of the homicide; and one who, with a deadly weapon, attempts to strike a person who is at the same time struck by another with a deadly weapon, death resulting, is a joint principal in the offense. And where a fight occurred between two persons, and a third took part in it in favor of one of them, and both inflicted injuries upon the other by blows and kicks, and the latter died, the cause of death being a rupture of an artery in the head caused by the blowsor kicks received from them, both are to be regarded as equally guilty of causing death. So, a person may be criminally responsible as principal for homicide when death resulted from the joint negligence of himself and another. And joint principals may be convicted of different degrees. Where two persons acted independently, however, each can be held responsible only for the result of his own acts, and unless such acts contributed to the death, the doer is not responsible for the homicide. Death must have ensued as the result of the act of the person sought to be charged. And though two persons simultaneously assault another, and one of them causes his death, the other is not criminally responsible where there was no mutual understanding that they would injure the person killed, and the slayer acted without the knowledge or participation of the other. And where two persons each shot at another at the same moment, and the jury in a prosecution for the killing are doubtful which of the two shots proved fatal, they cannot infer that the shot was fired by either one or the other of the two, or that the killing was wilful, deliberate, and premeditated, constituting murder in the first degree. But a person actually present assisting to the extent *Page 1382 
of his ability in the accomplishment of a homicide is guilty as principal in the first degree, without reference to the extent or effectiveness of the assistance rendered by him."
To render a defendant guilty, it is not necessary that the blow given by him, or his wrongful act, was the sole cause of death. Even if the blow or act was only a partial cause accelerating death, the defendant is nevertheless guilty. Flanagan v. State,369 So.2d 46, 49 (Ala.Cr.App. 1979). One charged with murder, who inflicted the fatal blow, cannot escape liability from the fact that other blows were subsequently inflicted by others which hastened the death. Tidwell v. State, 70 Ala. 33, 45-6
(1881).
Daniel and Phillip could both be properly convicted of Coleman's murder, even though they acted independently, if each inflicted an injury that caused, contributed to, or accelerated Coleman's death. "(A)lthough a man cannot be killed twice, two persons acting independently may so contribute to his death that each will be guilty of homicide." Wharton at Section 31.
It is undisputed that Daniel stabbed Coleman. The only issue was whether it was in self-defense. It is also undisputed that Phillip attacked Coleman immediately after Daniel had stabbed Coleman and while Coleman was still on the floor. Coleman was stabbed or cut seven times. One of the fatal stab wounds was inflicted in a direction different from the other injuries. There was evidence from which the jury could infer that Phillip carefully concealed a knife on his person at the time of his arrest and that he gave it to the police only after he had washed it in an attempt to remove any trace of blood. These acts of Phillip following his arrest constitute a consciousness of guilt which the jury could properly consider in determining his participation in Coleman's murder. Landry v. State,56 Ala. App. 421, 321 So.2d 759 (1975); Pelham v. State,24 Ala. App. 330, 134 So. 888, cert. denied, 223 Ala. 155,134 So. 890 (1931). The fact that it could not be proven which knife inflicted each particular wound was also a circumstance for the jury to consider. Under the facts of this case, there is no violation of the principle that, where a person is killed and it cannot be ascertained which of several persons did it, all must be acquitted. Wharton at Section 31.
Applying the principles set out in Dolvin v. State,391 So.2d 133 (Ala. 1980), and Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, Ex parte Cumbo, 368 So.2d 877 (Ala. 1979), we find the evidence sufficient to sustain the convictions of both Daniel and Phillip for murder. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.