[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 487 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 488 
 ON REHEARING
The original opinion in this case, dated June 12, 1984, is withdrawn, and the following is substituted in its place.
Michael C. Faircloth and his cousin Jim Carl Faircloth were jointly indicted for attempted rape in violation of Alabama Code § 13A-4-2 (1975). Both defendants were found guilty in a joint trial and sentenced to fifty years' imprisonment. This appeal is by Michael Faircloth.
 A
The appellant contends that the State failed to present a prima facie case and that his motion to strike the State's evidence and motion for a new trial should have been granted. At trial, defense counsel's objection was: "As to Michael Faircloth, we would move to strike State's evidence for failure to make a prima facie case for the charge of attempted rape."
The State's evidence reveals that Michael actively aided and abetted Jim Carl in the attempted rape and was therefore legally accountable for Jim Carl's behavior. Alabama Code §13A-2-23 (1975). The victim testified that she was abducted by Michael and Jim Carl. Jim Carl "grabbed" her arm, "shoved" her into a van, and got on top of her and held her down. He beat her with his fist to stop her screaming. Jim Carl told Michael to "start up the van." Michael drove the van, following Jim Carl's directions, to a "secluded" spot down a "little gravel road."
Michael then "guarded" the victim while Jim Carl "went around to the back of the van." Michael "shoved" her back into the van and held her arms down and Jim Carl got on top of her and said, "Hold her, hold her down, and I will hold her legs." The victim stated, "Then they took my shorts off, and when the slim one [Michael] was holding my arms down, I bit him right here [on the arm]." Michael then hit the victim with his fist "right in the face" and "crushed her jaw down because I was screaming andthey wanted me to shut up, the two men did." Michael said, "If you don't cooperate you won't ever talk again." The victim also testified that Michael was holding down her arms while Jim Carl was pulling off her shorts.
The victim stated that Michael got directly on top of her and tried to kiss her. When Michael could not stop her from screaming he said, "to H-e-l-l with this b-i-t-c-h. He said, `I am not going to fight for this. You can have her.'" Then Michael got in the front of the van and Jim Carl attempted to rape the victim but "could not perform."
A defendant may be convicted on the uncorroborated testimony of the prosecutrix. Barnett v. State, 83 Ala. 40, 3 So. 612
(1888); Boddie v. State, 52 Ala. 395 *Page 489 
(1875). In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution. Johnson v. State,378 So.2d 1164, 1169 (Ala.Cr.App.), cert. quashed, Ex parteJohnson, 378 So.2d 1173 (Ala. 1979).
It is insignificant that Michael had apparently abandoned his intent to sexually assault the victim when Jim Carl attempted the rape. "One who assists, procures, or counsels another to commit rape and is absent when it is committed is guilty as an accessory before the fact, except that, where the distinction between principals and accessories is abolished by statute, he is guilty as a principal even if absent during its commission."Clayton v. State, 244 Ala. 10, 12, 13 So.2d 420 (1942). Alabama Code § 13A-2-23 (1975) continues the long recognized abolition of the distinction between principals and accessories in Alabama.
Michael aided in the abduction of the victim by driving the van, he guarded her in Jim Carl's absence, and aided in helping Jim Carl hold her down. There is also evidence that Michael attempted to rape the victim and would have done so had the victim not been screaming, fighting, and struggling. Cogman v.State, 424 So.2d 1355 (Ala.Cr.App. 1982).
At the beginning of the trial the prosecutor stated to the trial judge that he expected to prove that both Michael and Jim Carl "acted as accessories and principles at different times." In our opinion, the evidence sustains and fully supports that expectation.
 B
Michael contends that the consolidation of his case with Jim Carl's was improper for three reasons: (1) The similarity of the names of the defendants led to unnecessary confusion. (2) The Fifth Amendment problem of calling a co-defendant to testify. (3) Jim Carl's prior criminal record.
Michael and Jim Carl were charged in the same indictment. The allegations and proof show that they participated in the same criminal transaction. Their joint trial was authorized by Rule 15.4 (c), A.R.Crim.P.Temp. Michael's arguments against consolidation do not reveal that he might have been prejudiced to the extent that a fair trial could not be afforded. Rule 15.4 (d) A.R.Crim.P.Temp.
"The test of whether a severance should be granted on the ground of prejudice to the defendants is whether under all the circumstances as a practical matter it is within the capacity of the jurors to follow the court's instructions and to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts." Holsemback v. State,443 So.2d 1371, 1378 (Ala.Cr.App. 1983).
Michael's allegation of prejudice and confusion caused by similarity of names is unfounded. The record reveals that at the time of the crime Jim Carl was bearded and heavy set while Michael was slim. The victim displayed no confusion or hesitation in describing which defendant committed which act. Other than the single fact that both defendants have the same last name, there is no basis for a claim of even possible confusion.
Michael also argues that he could have been prejudiced if Jim Carl had claimed his Fifth Amendment privilege and refused to testify when called as a witness. Regardless of what could have happened, the fact is that it did not.
Before trial, Jim Carl's defense counsel told the trial judge that his client would testify. At trial, Jim Carl testified in his own defense. Michael also testified. Here, there was no violation of the rule that a defendant's Sixth Amendment right to confrontation may be violated by introduction of a nontestifying co-defendant's extrajudicial statement inculpating the defendant. Bruton v. United States,391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 *Page 490 
(1968). Both Michael and Jim Carl denied assaulting the prosecutrix. Their defenses were compatible and not mutually exclusive. Holsemback, 443 So.2d at 1378. There has been no showing that the jury had to disbelieve Jim Carl's testimony in order to believe the core of the evidence offered by Michael.United States v. Badolato, 701 F.2d 915, 923-24 (11th Cir. 1983).
A severance was not required because Jim Carl had convictions for "breaking and entering and larceny" and for burglary. "`Compelling prejudice requiring severance does not result when the evidence against the codefendant is more damaging than against the defendant, or when the prosecution introduces into evidence a codefendant's past criminal record or reputation.'"Holsemback, 443 So.2d at 1377-78. The United States Court of Appeals for the Eleventh Circuit "has specifically held that the introduction of evidence regarding a codefendant's past criminal record does not in itself require severance." UnitedStates v. Glen-Archila, 677 F.2d 809, 817 (11th Cir.), cert. denied, 459 U.S. 874, 103 S.Ct. 165, 74 L.Ed.2d 137 (1982).
The trial judge instructed the jury to consider the guilt or innocence of each defendant "separately and independently, and if you find that one or the other is guilty, that would raise absolutely no presumption of the guilt of the remaining defendant unless you were considering the offense of aiding and abetting. . . . You must consider their cases and the guilt or innocence of each defendant separately and relate the evidence to the charge of the State against that defendant, and then go on to the other defendant before you make a consideration of that. You do not base the guilt of one on the guilt of the other." United States v. Hines, 696 F.2d 722, 732 (10th Cir. 1982); United States v. Gee, 695 F.2d 1165, 1169-70 (9th Cir. 1983). The trial was short, lasting approximately one and one-half days, with only one day of testimony, and the issues were not complex. United States v. Long, 705 F.2d 1259, 1263
(10th Cir. 1983); United States v. Butera, 677 F.2d 1376,1385-86 (11th Cir. 1982), cert. denied, 459 U.S. 1108,103 S.Ct. 735, 74 L.Ed.2d 958 (1983). Under these circumstances, the motion to sever was properly denied.
 C
Soon after the victim had been released by her assailants, she flagged down a passing automobile driven by Debra Applegate. Over objection, Ms. Applegate was allowed to testify that when the victim got in her car she kept repeating the license tag number of the van and said that "two guys had tried to rape her." Considering the "factors relating to whether the declarant was under the stress of a nervous excitement at the time the statement was made", Wallace v. State, 408 So.2d 171,173 (Ala.Cr.App. 1981), cert. denied, 408 So.2d 173 (Ala. 1982), we find that this testimony was properly admitted as a spontaneous exclamation and an exception to the hearsay rule.Brooks v. State, 57 Ala. App. 478, 329 So.2d 167 (1976); Daniellv. State, 37 Ala. App. 559, 73 So.2d 370, cert. denied, 261 Ala. 145, 73 So.2d 375 (1954) (admitted as part of the res gestae.
See C. Gamble, McElroy's Alabama Evidence § 265.01 (1) et seq. (3rd ed. 1977)). As an exception to the general rule that on a charge of rape only the mere fact of complaint is admissible, "the full details of the complaint are admissible if the complaint is admissible as a spontaneous exclamation under that particular exception to the hearsay rule." C. Gamble, McElroy'sAlabama Evidence § 178.01 (3rd ed. 1977).
 D
At the beginning of the trial, Michael's defense counsel invoked "the Rule". The trial judge instructed counsel for both defendants: "You are both responsible for your own witnesses." After the last defense witness testified, the following occurred:
 "MR. ACCARDI (Assistant District Attorney): Your Honor, we are going to *Page 491 
object to Sherry testifying, she was in the Courtroom.
 "MR. WILLISSON (Michael's defense counsel): Were you in the Courtroom?
 "THE COURT: This witness was in the Courtroom for a substantial part of the trial; is that correct, ma'am?
"AN UNKNOWN WITNESS: Yes, it sure is.
"MR. WILLISSON: Are you sustaining the objection?
 "THE COURT: You invoked the Rule, I believe, and the witness has been in the Courtroom and has heard part of the testimony, and the State is objecting to that; so I would have to sustain it.
 "MR. WILLISSON: Okay. Our other witness has not arrived, Your Honor."
This constitutes all the information on this alleged error that is contained in the record. Although there was a motion for new trial, this issue was not raised. The witness was never further identified and there was no showing of her expected testimony.
The general rule is that "(i)f a witness in a criminal case violates the order without fault in the accused, the accused cannot be deprived of the witness' testimony as such deprivation would violate the accused's constitutional right to have witnesses testify in his behalf and at his call." McElroy
§ 286.01, citing Braswell v. Wainwright, 463 F.2d 1148 (5th Cir. 1972); Peters v. State, 240 Ala. 531, 200 So. 404 (1941);Degg v. State, 150 Ala. 3, 43 So. 484 (1907). However, even if error be present, a reversal is not always required.
 "Although the trial court's exclusion of a witness because of a mere violation of a sequestration order may constitute error, such error will not warrant a reversal unless the testimony of the expected witness was material. . . . [T]he courts as a rule have taken the view that in the absence of a showing as to the nature or content of the excluded testimony, it must be presumed that the trial court acted properly and within its discretion in excluding the testimony." Annot., 14 A.L.R.3d 16, 24 (1967).
See Pope v. State, 367 So.2d 998, 1001-02 (Ala.Cr.App. 1979). Since there was no proffer of the testimony of the expected witness and not even the allegation that her testimony was material, we must presume that the trial judge acted properly and did not abuse his discretion.
 E
It is argued that the trial judge erred in refusing to grant Michael's request for a continuance to secure the attendance of a missing witness.
The victim testified that she and her husband had not had a fight. In order to contradict this testimony, Michael sought to call Greg Cardwell. Cardwell was present "here in the hall prior to the court coming back at one-thirty", and "voluntarily left the premises." Defense counsel talked with him at that time. At 4:10 p.m., the court recessed "for the purpose of getting this witness here", and Michael contacted Cardwell by telephone. Cardwell "said he was coming, he would put his clothes on and come on back." He lived about eight miles from the courthouse. Cardwell had not been subpoenaed.
The trial judge called a brief recess to accommodate the absent witness. When Cardwell was still absent at 4:50 p.m., the trial judge stated, "Well, it is now closing on forty minutes from the time, and that is sufficient time to get anywhere within this County just about it, so I think we had better go on ahead." The defense offered no explanation for Cardwell's absence or why he failed to return to court.
We find no abuse of discretion in the refusal of the continuance. Hannon v. State, 284 Ala. 487, 226 So.2d 90
(1969). There was never any request that compulsory process issue for Caldwell and no explanation was advanced for his absence. There was no contention that Cardwell's attendance could be obtained within a reasonable time. Even though he lived only a short distance from the courthouse, there was apparently no attempt made to secure his attendance, other than a telephone call. "It is settled law that the matter of a *Page 492 
continuance rests in the sound discretion of the trial court, and its ruling will not be disturbed unless a gross abuse of the court's prerogative is shown." Butler v. State, 285 Ala. 387,393, 232 So.2d 631 (1970), cert. dismissed, 406 U.S. 939,92 S.Ct. 1807, 32 L.Ed.2d 140 (1972).
II. Jim Carl Faircloth raises three issues on appeal.
 A
Jim Carl argues that the trial judge erred by denying his motion for a severance. In part I (B) of this opinion, we found that Michael's allegations of prejudice and confusion caused by the joinder of co-defendant Jim Carl were unfounded. Jim Carl also alleges prejudice and contends that "he did not know if this cause would be tried jointly or separately until a few minutes before trial." He argues that "the joinder status of a trial should be determined with certainty by the court at least seven days prior to trial." Jim Carl's complaint is not legitimate in view of the fact that his motion to sever was filed less than two days before trial.
The indictment was returned on August 12, 1983. Jim Carl's motion to sever was filed on October 3, 1983. Arraignment was held on October 5th and trial on October 6th.
"Defendants joined in the same indictment, . . . shall be jointly tried unless severed." Rule 15.4 (c) A.R.Crim.P.Temp. Where there has been no arraignment, where a written plea of not guilty has not been filed, and where the trial judge has not ordered joinder on his own, a defendant may file a motion to sever at any time prior to the commencement of trial, but he must do so at the earliest reasonable opportunity. Rule 15.3 (e) and 15.4 (f), A.R.Crim.P.Temp.
Here, the motion to sever was not ruled on until immediately before the trial began. There is no allegation that counsel sought or requested an earlier ruling. Under Rule 15.4 (c), the defendant must be prepared to be tried jointly with his co-defendant until the time a severance is granted. Here, Jim Carl's confusion as to whether he would be tried jointly or separately is attributable to the delayed filing of his motion to sever. It is only where the trial court orders the joinder of separate indictments of defendants that the judge's order of joinder must be made no later than seven days prior to trial. Rule 15.3 (b) and 15.4 (b), A.R.Crim.P.Temp.
 B
We find no error in the failure of the trial judge to grant a continuance to allow Jim Carl to secure the presence of an absent witness. Jim Carl's argument is substantially identical to Michael's. See Part I (E) of this opinion.
Michael's defense counsel made a showing as to the expected testimony of the absent witness. Jim Carl's defense counsel then "ask[ed] the state if they would stipulate that that is what he would testify to if he were here in court and sworn as a witness." The prosecutor refused this request.
"It was within the discretion of the trial court to grant a continuance to defendant on account of the absence of some of his witnesses, or to put the prosecution on showing by defendant as to what the witnesses would testify, if present."Cagle v. State, 211 Ala. 346, 347, 100 So. 318 (1924). Although the trial judge may require the State to accept a showing,Powell v. State, 39 Ala. App. 246, 253, 100 So.2d 38 (1957), cert. denied, 267 Ala. 100, 101 So.2d 46 (1958), that is a matter within his sound discretion. Here, there was never any request that the trial judge require the State to agree to a stipulation of testimony. Absent such a request, we find no abuse of the trial judge's discretion in failing to require the State to agree to a stipulation of an absent witness's testimony.
 C
Jim Carl contends that the trial judge erred by sentencing him as an habitual offender without requiring proof of the *Page 493 
previous convictions and without informing him of the consequences of an admission of prior convictions.
Jim Carl testified at trial that he had been convicted of "breaking and entering and larceny in North Carolina" in 1974 or 1975 and "burglary of a structure in Florida in 78." In each case he was sentenced to five years' imprisonment. This issue was not raised at trial and is not preserved for review.
Moreover, at the sentencing hearing, the trial judge asked both defendants, "Do either of you contest these prior convictions?" In the presence of his defense counsel Jim Carl responded, "No, sir." In our opinion this constituted a waiver of the State's burden of proving the prior convictions. Rule 6 (b)(3)(iii), A.R.Crim.P.Temp. A defendant's admission is a proper method of proving a prior conviction for purposes of the Habitual Felony Offender Act. Burrell v. State, 429 So.2d 636,640 (Ala.Cr.App. 1982); Peoples v. State, 415 So.2d 1230
(Ala.Cr.App. 1982); Crittenden v. State, 414 So.2d 476, 482
(Ala.Cr.App. 1982); Miliner v. State, 414 So.2d 133, 135
(Ala.Cr.App. 1981); Lyner v. State, 398 So.2d 420 (Ala.Cr.App. 1981). See also Donahay v. State, 287 Ala. 716, 718,255 So.2d 599 (1971). We have found and have been cited to no authority for the proposition that a defendant must be informed by the court of the result of any admission regarding prior felony convictions. An accused who elects to testify in his own behalf waives his constitutional right not to be compelled to give evidence against himself and may be impeached like any other witness. Johnson v. State, 292 Ala. 208, 291 So.2d 336 (1974).
Finally, Jim Carl argues that his fifty year sentence amounts to cruel and unusual punishment. No objection was made to the sentence before the trial court and this issue is not preserved for review. The sentence is within the statutory limits and there is no allegation or evidence to support a finding that the sentence was significantly disproportionate to the crime committed. Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001,77 L.Ed.2d 637 (1983).
Our review of the record convinces us that both Michael and Jim Carl received a fair trial. The judgment of the circuit court as to both appellants is affirmed.
ORIGINAL OPINION WITHDRAWN;
APPLICATION FOR REHEARING OVERRULED;
AFFIRMED.
All Judges concur.