467 So.2d 894 (1985)
Otis Lee FAIRLEY
v.
STATE of Mississippi.
No. 54567.
Supreme Court of Mississippi.
February 13, 1985.
Rehearing Denied May 15, 1985.
*895 Isaac K. Byrd, Jr., Owens & Byrd, Jackson, for appellant.
Bill Allain, Atty. Gen. by Carolyn B. Mills, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Covington County wherein the appellant, Otis Lee Fairley, was indicted and tried for the capital murder of Mississippi Highway Patrolman Billy Langham. A jury found Fairley guilty of murder and the trial court sentenced him to life imprisonment in the custody of the Mississippi Department of Corrections. From his conviction and sentence Fairley brings this appeal and assigns as error the following:
I. THE COURT ERRED IN FAILING TO GRANT THE APPELLANT'S MOTION TO DISCHARGE HIS COURT-APPOINTED ATTORNEY AND ALSO IN FAILING TO GRANT THE COURT-APPOINTED ATTORNEY'S MOTION TO BE DISCHARGED FROM REPRESENTING THE APPELLANT WHEN BOTH THE APPELLANT AND THE APPELLANT'S ATTORNEY DESIRED SAID MOTION, AND HENCE, DENIED APPELLANT A FAIR TRIAL IN VIOLATION OF THE SIXTH AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
II. THE COURT ERRED IN FAILING TO GRANT APPELLANT A MISTRIAL WHEN IN BOTH ITS OPENING STATEMENT AND ITS CLOSING STATEMENT, THE DISTRICT ATTORNEY STATED TO THE JURY THAT THE DISTRICT ATTORNEY WAS A CLOSE FRIEND TO THE VICTIM, THUS, DENYING THE DEFENDANT HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL.
III. THE COURT ERRED IN ALLOWING THE JURY TO CONTINUE TO DELIBERATE WHEN ONE OF THE JURORS HAD SENT OUT A NOTE INDICATING THAT HE WANTED TO VOTE FOR CAPITAL MURDER AND REQUESTING THAT HE BE RELIEVED OF HIS DUTY TO CONTINUE SERVICE AS A JUROR, AND THE COURT FURTHER ERRED BY REPLYING INDIVIDUALLY TO THAT JUROR THAT THE COURT COULD NOT *896 EXCUSE ANY JUROR FOR THAT REASON.
IV. THE COURT ERRED IN ALLOWING STATE'S INSTRUCTION NUMBER TWO (2) AS TO THE ELEMENTS OF THE CRIME OF CAPITAL MURDER WHEN SUCH INSTRUCTION ALLOWED THE JURY TO CONSIDER THE FACT THAT A KNIFE WAS THE INSTRUMENT OF DEATH WHEN THE EVIDENCE DID NOT SHOW THAT THE DECEASED WAS KILLED WITH A KNIFE.
V. THE COURT ERRED IN ALLOWING STATE'S INSTRUCTION NUMBER TWO (2) AS TO THE ELEMENTS OF THE CRIME OF CAPITAL MURDER WHEN SAID INSTRUCTION MADE REFERENCES TO THE CO-DEFENDANTS BEING INVOLVED IN THE CRIME, AND HENCE, ALLOWING DEFENDANT TO BE TRIED FOR THE ACTS OF THE CO-DEFENDANTS.
VI. THE COURT ERRED IN ALLOWING THE STATE TO INTRODUCE INTO EVIDENCE PROJECTILE FRAGMENTS FROM THE ALLEGED MURDER WEAPON WHEN THIS BALLISTICS EXPERT TESTIFIED THAT HE COULD NOT IDENTIFY THE PROJECTILES AS BEING FIRED FROM THE ALLEGED MURDER WEAPON.
VII. THE COURT ERRED IN FAILING TO GRANT DEFENDANT'S JURY INSTRUCTION NUMBER TWENTY-THREE (23) REGARDING THE TESTIMONY OF ACCOMPLICES.
Fairley has also filed a supplemental prose brief in which he argues the insufficiency of the evidence.
On December 31, 1981, Mississippi Highway Patrolman Billy Langham was shot to death on the side of Highway 49 near Collins, Mississippi. Although a number of witnesses testified to seeing Patrolman Langham struggling with two or three black male assailants, the evidence most damaging to Fairley came in the form of the testimony of his first cousin, Anthony Fields. Fields testified that on the morning of the shooting he was staying in a hotel in New Orleans with Otis Lee Fairley. That day they met Samuel Johnson and Charles Montgomery. All four of them decided to come to Collins, Mississippi in Johnson's black over yellow LTD with the intent to pass bad checks.
Fields testified that when they drove past a Mississippi Highway Patrol car parked in the median of Highway 49 the patrolman pursued them and pulled them over for speeding. That patrolman was Officer Langham. Langham asked Johnson for his drivers license but Johnson didn't have one. Langham then asked Johnson to get out of the car. After Johnson was out of the car, Langham saw a knife under the front seat. Langham reached under the seat, seized the knife, and put it on top of his patrol car parked behind Johnson's LTD. Langham then ordered the other occupants of the LTD to get out. According to Fields, Langham then searched them all.
Langham ordered all four of the car's occupants to stand on the righthand side of his patrol car. He then proceeded to search Johnson's car. Fields testified that he saw Johnson whisper something to Fairley. Fairley then took the knife that Langham had put on top of the patrol car and gave it to Johnson. When Patrolman Langham began searching the back seat of Johnson's car, Johnson approached him and stabbed him in the back. Both Langham and Johnson reached for Langham's gun. Johnson then hollered for Fairley to knock Langham out. Fairley came over and started hitting Langham in the face. On Johnson's order, Montgomery grabbed Langham's gun and the fracus ceased momentarily. According to Fields, he, Montgomery, Johnson and Fairley then went back to Johnson's car. Patrolman Langham pleaded for his life but, on Johnson's order, Montgomery shot him in the head. Montgomery then threw the officer's revolver out the car window and the four men left the scene.
According to Fields, they drove to a nearby railroad track and got out of the car. Johnson then discovered a yellow Mercury *897 Comet parked near the railroad tracks with the keys in it. The four of them took that car. They drove on until they were stopped at a roadblock by law enforcement officers who shot the tires out from under their car. As previously noted, the state produced numerous other witnesses who saw the assault on Patrolman Langham but were unable to identify the assailants. Additionally, the state produced Dr. Thomas Glen Puckett, a pathologist, who testified that he performed an autopsy on Patrolman Langham. According to Dr. Puckett, Langham suffered three major wounds: a cut to his left eye approximately one inch long down to the cheek bone; a two inch wound in the back four inches deep which extended into Langham's left lung; the third and most serious wound was a stellate shaped gunshot wound to Langham's forehead. Dr. Puckett testified that the appearance of the third wound indicated that the weapon which caused it was fired at a close range. In Dr. Puckett's opinion, the cause of Patrolman Langham's death was extensive brain damage which resulted from the gunshot. Dr. Puckett was further of the opinion that the knife wound in Langham's back was very serious but with treatment his survival would have been likely.
The state produced other witnesses and, to the extent necessary for the resolution of this appeal, their testimony will be detailed below.
After the state concluded its proof, the defense made a motion for a directed verdict. When that motion was overruled the defense also rested. The jury then returned a verdict finding Otis Lee Fairley guilty of murder.

THE LAW

SHOULD FAIRLEY HAVE BEEN APPOINTED NEW COUNSEL?
Fairley's first argument on this appeal is that he was denied the right to counsel because the trial court failed to order that his counsel be discharged and to provide him with new counsel. In order to understand the position of the parties it is necessary to present a chronological explanation of Fairley's attempts to find an attorney with whom he was satisfied.
January 18, 1982  Fairley is represented by Hon. Talmage Allred.
January 20, 1982  Talmage Allred files a motion for a continuance which states as grounds for the continuance the fact that he and Dewitt Allred, III were appointed to defend Fairley on January 1, 1982.
January 22, 1982  An order is filed in the Circuit Court of Covington County appointing Dewitt Allred, III as co-counsel for Fairley.
May 10, 1982  Fairley and his attorneys, Talmage Allred and Dewitt Allred, file a motion for termination of appointment of counsel and for appointment of new counsel. As grounds to support this motion are the fact that Fairley was dissatisfied with his counsel, the attorneys felt that other counsel could more effectively represent Fairley, and the allegation of the attorneys that "They cannot in good conscience continue to represent the defendant in these causes since the rapport and confidence between an attorney and client necessary to preparation of an effective defense" did not exist.
May 11, 1982  The court holds hearings on the motion to terminate. At this hearing Fairley testified that he wanted a new lawyer. He stated that he wanted to participate in the grand jury selection and he wanted that desire to appear in the record. He stated that his attorneys were unwilling to discuss this point with him. The court ruled that it would not allow the attorneys to withdraw but that it would attempt to get another person to associate with them on the case. Fairley replied that he wanted ACLU or NAACP representation. Fairley's attorney, Talmage Allred, testified that he had been in contact with the ACLU office in Jackson and that they had told him they did not have the funds to represent Mr. Fairley. Thereafter the court stated it would attempt to appoint Isaac Byrd as additional counsel for Fairley. Fairley agreed to the appointment of Byrd. Apparently *898 there was some difficulty in contacting Mr. Byrd as he was not appointed to represent Fairley at this point.
May 14, 1982  The court enters an order terminating the appointment of Talmage Allred and Dewitt Allred, III as attorneys for Fairley. The court entered another order appointing Edward Blackmon as counsel for Fairley. At a hearing on this date, Fairley expressed his satisfaction with Mr. Blackmon.
July 8, 1982  The court sustains a motion to make Fairley his own co-counsel.
June 14, 1982  The court enters an order appointing Mr. Blackmon's law partner, Ferr Smith, as co-counsel.
July 12, 1982  The court holds a hearing on another motion by Fairley for termination of appointment of counsel and for appointment of new counsel. Fairley testified that defense counsel Blackmon feared for his life because he was representing Fairley and that therefore Fairley was afraid Blackmon would not "amply represent me." Fairley stated he wanted a new attorney because of that. Attorney Blackmon was asked to respond to this by the court. Blackmon stated "None of what Mr. Fairley has said is the truth." Blackmon went on to state that he didn't feel he could represent Fairley because he did not have confidence in Fairley nor did Fairley have confidence in him. Blackmon further explained that because of differences he and Mr. Fairley had regarding strategy and their inability to communicate, Blackmon believed "It would be unfair to him (Fairley) certainly to have me in this case based upon his statements to me and the court today." Mr. Blackmon did state that should the court see fit not to relieve him of his duty that he would do the best he could. In light of the last statement the court ruled that it would not allow Mr. Blackmon to withdraw as counsel.
July 15, 1982  Fairley's attorneys, Edward Blackmon and Ferr Smith, file another motion to withdraw as court-appointed counsel.
July 16, 1982  The court holds a hearing on the latest motion to withdraw. Attorney Blackmon testified that he was "not mentally into his case to the extent that the defendant deserves." Mr. Blackmon stated that differences in trial strategy with his client forced him to believe that he was not mentally prepared to represent Fairley and that should he be required to do so he did not feel that he would perform well. In support of his motion, Blackmon cited ethical consideration 7-26 which states that a lawyer is prohibited from knowingly participating in the introduction of fraudulent, false or perjured testimony or evidence. The court ruled that because the case was set for trial on July 26, 1982, only ten days away, it would overrule the motion.
July 26, 1982  Fairley's trial begins and he is represented throughout by Edward Blackmon and Ferr Smith.
Both parties cite Harris v. State, 386 So.2d 393 (Miss. 1980), as this Court's leading case on this question. Harris was convicted of armed robbery. His defense attorney had filed a motion to withdraw as counsel because the victim of Harris' armed robbery had talked to a senior member of the defense attorney's firm about the civil liability of Harris for an automobile which was damaged as a result of Harris' escapade. At a hearing on the motion it was determined that the details of the conference between the victim and the senior law partner were not made known to the attorney representing Harris, that no civil suit would be filed and that therefore, the law firm did not actually represent the victim. Thereafter the court overruled the motion to withdraw. Upon these facts, this Court held:
Mississippi has adopted the "actual prejudice" rule in Augustine v. State, 201 Miss. 277, 28 So.2d 243 (1946). In Augustine, this Court stated that the test is "whether the accused has been protected, so far as counsel can do so, in all of his legal rights."
It is clear to us, from a careful study of the record in this case, that Palmer represented the defendant well and protected *899 Harris "in all of his legal rights." See also Dunn v. State, 264 So.2d 823 (Miss. 1972).
The trial judge did not abuse his discretion in overruling the motion of the court-appointed defense counsel to withdraw.
386 So.2d at 395.
More recently, in Taylor v. State, 435 So.2d 701 (Miss. 1983), this Court again addressed an appellant's argument that the trial court abused its discretion in refusing to allow an attorney to withdraw as counsel. In Taylor the trial judge found that it was to Taylor's best interest that his attorney continue to represent him. The court further found that the attorney had become familiar with the case and had once before tried it in a lower court, handled an appeal to this Court and secured a reversal. On these facts we held:
We have held that the trial court has discretion in considering a motion of an attorney to be discharged. Burnett v. State, 285 So.2d 783 (Miss. 1973); Evans v. State, 273 So.2d 495 (Miss. 1973). See also, United States v. Pigford, 461 F.2d 648 (4th Cir.1972); United States v. Dilworth, 524 F.2d 470 (5th Cir.1975). In McKee v. Harris, 649 F.2d 927 (2d Cir.1981), we find the following:
This Court has long recognized that certain restraints must be put on the reassignment of counsel lest the right be "manipulated so as to obstruct the orderly procedure in the courts or to interfere with the administration of justice." United States v. Bentvena, 319 F.2d 916, 936 (2d Cir.), cert. denied, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963). Therefore, "[i]n order to warrant a substitution of counsel during trial, the defendant must show good cause, such as a conflict of interest a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." United States v. Calabro, supra, 467 F.2d [973] at 986 [(2d Cir. 1972)]. See: Maynard v. Meachum, supra, 545 F.2d [273] at 278 [(1st Cir.1976)]; United States v. Gutterman, 147 F.2d 540, 542 (2d Cir.1945). See also R. Chused, Faretta and the Personal Defense: The Role of a Represented Defendant in Trial Tactics, 65 Calif.L.Rev. 636, 645-6 (1977). The question therefore boils down to whether McKee demonstrated good cause for the substitution of assigned counsel. (Emphasis added)
In Shaw v. United States, 403 F.2d 528 (8th Cir. 1968), the Court said:
A defendant cannot base a claim of inadequate representation upon his refusal to cooperate with appointed counsel. Such a doctrine would lead to absurd results.
435 So.2d at 703.
There is no indication in this record that attorneys Blackmon and Smith were derelict in their duty or engaged in any activity or strategy which prejudiced Fairley's case. Those attorneys ably cross-examined the state's witnesses and raised appropriate objections to inadmissible material. They filed numerous pretrial motions and succeeded in having Fairley's custodial statements suppressed. In fact, they were successful in obtaining a verdict of less than capital murder.
Based on the quality of Fairley's trial representation and the fact that the last two motions for leave to withdraw were filed within two weeks from the date the case was to be tried, this Court is of the opinion that the trial court did not abuse its discretion in refusing to allow Fairley to obtain new representation, especially in light of having received attorney Blackmon's assurance that he would defend Fairley to the best of his ability.

DID THE PROSECUTOR'S STATEMENTS CONSTITUTE GROUNDS FOR A MISTRIAL?
Both during the state's voir dire of the jury and during the state's closing argument, the district attorney told the jurors that he was not going to apologize for striking a plea bargain deal with Anthony Fields because Officer Langham was a friend of his. On each occasion the trial *900 court admonished the prosecutor to stay away from personalities. Furthermore, after the prosecutor's comment during the closing argument, the jury was instructed to disregard that statement.
In recent cases this Court has reversed death penalties where a prosecutor's comments referred to the possibility of parol or probation. Wiley v. State, 449 So.2d 756 (Miss. 1984); Williams v. State, 445 So.2d 798 (Miss. 1984). The comments now in question are of a different nature than those found objectionable in Williams and Wiley. Additionally, where the trial court instructs the jury to disregard inadmissible comments or testimony, it is presumed that the jury will obey those instructions. Hubbard v. State, 437 So.2d 430 (Miss. 1983); Whitlock v. State, 419 So.2d 200 (Miss. 1982).
We are of the opinion that the prosecutor's comments did not constitute such an egregious error as to necessitate reversal of this cause. This is especially so in light of the judge's admonition to the jury to disregard those comments. Certainly the prosecutor had no business interjecting his personal relationship with the victim into his argument; however, that error was corrected by the trial court and there is no indication that it prejudiced the jury.

DID THE COURT COMMIT REVERSIBLE ERROR IN ITS RESPONSE TO A NOTE FROM A JUROR?
In this assignment of error Fairley argues that the trial court improperly communicated with an individual juror. The jury retired to deliberate at 7:55 p.m. At 11:30 that evening they retired for the night. They returned at 9:00 o'clock the next morning and at 9:55 a.m. the court stated into the record "The bailiff handed me a note a few minutes ago which stated that he was  stated that, `I am juror No. 8. I have reached a decision that the verdict should be capital murder. I know that a verdict will not be reached for that. May I be excused?' I think that's what it was." The court replied to the juror that it could not excuse any juror for that reason. At that point the defense moved for a mistrial. The trial judge overruled the motion but did accommodate the defense by complying with its request that the jury be notified that they continue their deliberations until they reach a verdict or until they report that they cannot reach a verdict.
It must be remembered that juror No. 8 did not request additional instructions on the law. He wanted to be excused from the jury panel because the jury was not going to reach a verdict which he supported. Certainly the court was correct in not allowing the juror to be dismissed. Also, the defense cannot complain of the trial court's "Allen charge" directing the jury to continue deliberations because that instruction was made at the defense's request. There is no evidence to suggest that the court's reply to juror No. 8 in any way prejudiced the defense. Juror No. 8 wanted to find Fairley guilty of capital murder. When the court ordered him to continue deliberating with the jury he obviously changed his mind and agreed to vote for a verdict of guilty of murder. As will be discussed in the final assignment of error this verdict was amply supported by the evidence and there was no indication of any prejudice to the defendant because of the trial court's action.

DID THE TRIAL COURT ERR IN SUBMITTING INSTRUCTION S-2 TO THE JURY?
Fairley raises two assignments of error regarding Instruction S-2. We will consider those arguments together.
Instruction S-2 reads:
The Court instructs the jury that the defendant Otis Lee Fairley, has been charged by an indictment with the crime of Capital Murder for having aided Samuel Johnson and Charles Montgomery to commit Capital Murder.
If you find from the evidence in this case beyond a reasonable doubt that:
1. The defendant, Otis Lee Fairley, aided Samuel Johnson and Charles Montgomery to commit Capital Murder by *901 handing the knife with which Officer Billy Morris Langham was stabbed by Samuel Johnson to Samuel Johnson; and
2. That the defendant, Otis Lee Fairley, struck Officer Billy Morris Langham about the face thereby enabling Charles Montgomery to obtain the pistol with which Officer Langham was shot by Charles Montgomery; and
3. That Charles Montgomery wilfully, unlawfully, feloniously and of his malice aforethought and without authority of law [did] kill and murder Billy Morris Langham, a lawman [sic] being by shooting said Billy Morris Langham with a .357 Mangum pistol; and
4. That said Billy Morris Langham was at the time of his death then and there acting in his official capacity as a peace officer, to wit: as a member of the personnel of the Mississippi Highway Patrol, and
5. That the defendant, Otis Lee Fairley then and there had knowledge and knew that the aforesaid Billy Morris Langham was acting in his official capacity as a peace officer aforesaid; and
6. That said killing and murder of Billy Morris Langham occurred on the 31st day of December, 1981, in Covington County, Mississippi then you should find the defendant, Otis Lee Fairley, guilty of Capital Murder.
In his fourth assignment of error Fairley argues that S-2 was not supported by the evidence because there was no evidence that Patrolman Langham was killed with a knife. A reading of S-2 reveals that, contrary to Fairley's assertion, it is tailored precisely to fit Anthony Fields' version of the events. Therefore it does conform to the evidence.
Fairley's fifth assignment of error is that S-2 was an improper instruction because it made Fairley responsible for the criminal acts of his co-defendants. Fairley argues that the fault in the instruction is that "The jury was not instructed that a crime must have been committed by either Mr. Samuel Johnson or Mr. Charles Montgomery in order to convict the appellant." This is contrary to the actual wording of the instruction which told the jury that they must find that Charles Montgomery "wilfully, unlawfully, feloniously and of his malice aforethought and without authority of law" killed and murdered Billy Langham. The instruction also required that they find Fairley "aided Samuel Johnson and Charles Montgomery to commit capital murder" by both handing the knife to Johnson and by striking Officer Langham about the face thereby enabling Montgomery to obtain the pistol used to kill Langham.
In our opinion Instruction S-2 is tailored specifically to the facts of this case. It was a proper instruction and there was no reversible error in granting it.

DID THE COURT ERR IN ADMITTING CERTAIN PROJECTILE FRAGMENTS?
Here Fairley argues that a projectile removed from Officer Langham's brain should not have been admitted into evidence because the state's forensic scientist could not establish conclusively that the projectile had come from the alleged murder weapon. The state's witness, John M. Allen, of the Mississippi Crime Lab, testified that the type of shell used in Officer Langham's weapon was a hollow point shell. This meant that the lead projectile was jacketed with a metal covering. Mr. Allen was able to positively identify fragments of the metal covering found in Officer Langham's head as having come from Officer Langham's weapon. Because the lead projectile inside the metal jacket does not pick up any of the gun barrel's grooves, it is not an identifiable item. Nonetheless, Dr. Puckett testified that Patrolman Langham was shot once in the head. The lead projectile removed from Officer Langham's head that Fairley now objects to was the only bullet found in Langham's head. Because there was no exit wound and only one entrance wound, it is only reasonable to conclude that the bullet found in Officer Langham's head came out of the metal jacketing which was positively traced to his weapon. Therefore, the state adequately established the relevancy *902 of the lead projectile to which Fairley now takes exception.

DID THE COURT ERR IN FAILING TO GRANT INSTRUCTION D-3?
Fairley argues that the trial court improperly denied him Instruction D-3. The court having read this instruction is of the opinion that it is substantially similar to Instructions D-16 and D-26, both of which were granted. This Court has repeatedly held that the trial court is not required to grant several instructions on the same point. McWilliams v. State, 338 So.2d 804 (Miss. 1976); Ragan v. State, 318 So.2d 879 (Miss. 1975). Because Instruction D-23 would have been cumulative with D-16 and D-26 we are of the opinion that the trial court did not err in refusing to grant it.

DID THE STATE PRODUCE SUFFICIENT EVIDENCE TO FIND FAIRLEY GUILTY BEYOND A REASONABLE DOUBT?
In Fairley's pro se brief he raises this assignment of error. When ruling on the sufficiency of the evidence, this Court must bear in mind that the jury is the sole judge of the weight and credibility of the evidence and that if all evidence on behalf of the state is taken as true, together with the reasonable inferences that may be drawn therefrom, and if there is sufficient evidence to support a verdict of guilty, this Court will not reverse. Goldman v. State, 406 So.2d 816 (Miss. 1981).
In the instant case there is more than sufficient evidence for the jury to have concluded that Otis Lee Fairley was guilty of the murder of Patrolman Langham. The testimony of Anthony Fields not only placed Fairley at the scene of the incident but involved him in procuring the butcher knife with which the assault on Officer Langham was initiated. Furthermore Fields testified that Fairley participated in beating up Patrolman Langham so that his weapon could be taken from him and subsequently used to murder him. In the opinion of this Court the evidence is sufficient to support the verdict.
Therefore, based on all of the foregoing, Otis Lee Fairley's conviction of murder and sentence of life imprisonment are hereby affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.