Jackie Collins was indicted on two counts of kidnapping in violation of § 13A-6-44, Code of Alabama 1975, two counts of attempted murder in violation of § 13A-4-2, Code of Alabama 1975 and one count of robbery in violation of §13A-8-41, Code of Alabama 1975. On the State's motion pursuant to Rule 15.4(b), A. Temp.R.Crim.P., the trial court consolidated for trial all of the indictments of this appellant and the separate indictments of Susan Brown Collins (CC 83-295) and Francis Mondell, Jr. (CC 83-0385). Susan Collins, the appellant's wife during the time in question, was charged with kidnapping and Francis Mondell, Jr. was charged with two counts each of kidnapping, attempted murder and conspiracy to commit murder.
Prior to trial, the case of Susan Collins was severed from the trial of appellant and Mondell. The appellant and Mondell were tried jointly. The jury acquitted Mondell of all charges and found the appellant guilty of the two counts of kidnapping, robbery in the first degree and two counts of first degree assault as lesser included offenses of the attempted murder charges. He was sentenced to 10 years' imprisonment under each kidnapping count, 20 years' imprisonment for the assault of Mrs. Mondell and 30 years' for robbery, the sentences at issue to run consecutively.
The evidence presented by the State tended to show that the appellant was in jail in Hartselle, Alabama when he first met Francis Mondell, Jr. Mondell had been placed in jail following his arrest in connection with his abduction of two of his children from his estranged wife approximately one month earlier.
Mondell and his wife, Deborah, had been having marital difficulties. Deborah left their home in Marion, South Carolina on February 20, 1983 and took their three small children to live with her sister and brother-in-law (Ann Murray and William "Donnie" Murray) in Hartselle, Alabama. *Page 297 
A few days later Mondell traveled to Hartselle from South Carolina and took two of the children (Michael and Bryan) back to South Carolina with him.
On March 17, 1983, Mondell drove to Hartselle with the children after receiving his wife's assurances of reconciliation. Soon after he arrived at the Murray's residence he was arrested and charged with menacing. Mondell was placed in a cell next to the appellant in the Hartselle jail.
While the two were in jail, they entered into an agreement whereby the appellant would take the two children from the Murray's home in Hartselle and deliver them to Mondell after they both had been released from jail.
Both the appellant and Mondell testified during trial. Each gave different versions of the events leading up to the incident upon which the charges were based.
Mondell testified that he had discussed his family problems with this appellant and the appellant had complained that he was recently married, had no money and was unable to pay his $75.00 fine to get out of jail. Mondell claimed that he gave the appellant $80.00 so that he could get out of jail because he felt sorry for him.
Before the appellant was released on March 18, he asked Mondell if he could do anything for him. Mondell claimed that he said "no" and then the appellant suggested that he would get Mondell's children for him. Mondell claimed there was no discussion of payment and that the appellant agreed to get the children "as a favor". According to Mondell, he warned the appellant to stay out of the Murray's home, not to hurt anyone and to take the children only if he could get them out of the yard without anyone seeing him. At first, Mon-dell told the appellant to deliver the children to him at a motel in Hartselle. Following his release later that day, however, Mondell returned to South Carolina.
The next day (March 19) Mondell, the appellant and his wife, Susan, had numerous discussions long distance, via telephone concerning the agreement. The next day, (March 20), according to Mondell, he called the appellant and told him to "forget it". The appellant volunteered to return the $80.00 and Mondell told him that repayment was unnecessary.
Mondell testified that he received a call from one of the Murray's neighbors at approximately 10:00 that night. The neighbor informed him that his sons were gone and that Mrs. Mondell and Donnie Murray had been shot. Shortly thereafter, Mondell called the Hartselle Police Department and denied knowing anything about what had happened.
The appellant then called Mondell at approximately 2:00 p.m. and offered to deliver the children to him at the Georgia-Alabama border. The appellant's wife told Mondell that she and the appellant needed over $160.00 to deliver the children. Mondell testified that he became frightened and he and his family eventually came up with $520.00. They finally agreed that the appellant would deliver the children to Mondell in Florence, South Carolina, since Mondell stated that he was being watched by the police.
At approximately 7:30 a.m. Mondell received a phone call from the appellant's wife informing him that they had arrived in Florence. Mondell met them there and found the children in good condition. He testified that he paid the appellant $500.00, but that the appellant's wife said that they would be contacting him for more money.
The appellant testified that Mondell initiated the discussion as to whether the appellant could get his children for him. Mondell asked the appellant how much it would cost and the appellant told him "$500.00". Mondell then agreed upon the price. According to the appellant, Mondell told him to do whatever was necessary to get the children, even if it meant killing the three adults. The appellant claimed that Mondell later changed his mind and instructed the appellant to only hurt his (Mondell's) wife.
The appellant claimed that Mondell never called the deal off and repeatedly urged him to hurry with the plans. The appellant claimed that Mondell threatened to "hire a professional" if he did not act soon. *Page 298 
The appellant testified that early Sunday evening (March 20) he and his wife went to the Murray's home. Susan went inside to see who was there, claiming that she needed to use the phone. The appellant stated that he had consumed a large quantity of whiskey, smoked marijuana and taken qualudes and speed earlier in the day.
Susan and the appellant left the Murray's home and then returned approximately 30 minutes later. They both went inside the house. Susan cut the phone lines and gathered up the two boys and some of their clothes. The appellant instructed the three adults to lie down on the floor and held a .22 caliber revolver on them. After Susan left with the children, the appellant turned the lights off, turned up the volume on the television and fired six shots at random in the direction of the adults. The appellant claimed he was only trying to scare them and did not realize until later that he had hit Mrs. Mondell and Donnie Murray.
During the police investigation, the appellant signed a written statement in which he admitted to having aimed the gun at the heads of the victims in an attempt to kill them so that there would be no witnesses.
The three adults testified that the appellant had forced them to lie on the floor at gunpoint. They then heard someone turn up the volume on the television set. They then heard the sound of gunshots. Mrs. Murray sustained no injury. Deborah Mondell felt something hit her head and Donnie Murray felt the first shot graze his head.
When the paramedics arrived they found Mrs. Mondell with a blood-soaked towel wrapped around her head, lying on a couch. She was conscious and had normal vital signs. She sustained entry and exit wounds to her scalp. The examining physician in the emergency room testified that Mrs. Mondell had "some soft tissue swelling" in the area and a lot of blood under the scalp. She suffered no internal injuries and was discharged from the hospital after the wound was treated. She received no stitches and surgery was not required.
Donnie Murray testified that, after the bullet grazed his head, he "knew [he] wasn't hurt too bad." The ambulance attendant stated that Murray suffered an abrasion across the top of his head approximately an inch or an inch and a half long. Murray did not seek medical treatment that night. The following day he received a tetanus shot.
 I
The appellant contends that the trial court erred in refusing his requested jury instructions on second and third degree assault as lesser included offenses of first degree assault. He argues that the evidence showed that neither Murray nor Mrs. Mondell sustained a "serious physical injury" within the meaning of § 13A-1-2(9), Code of Alabama 1975. He contends that their injuries instead fell within the definition of "physical injury" as used in § 13A-6-21(a)(2) (second degree assault) and, therefore, the charge should have been given.
The record reveals that the appellant did not properly preserve this issue for our review since he failed to object to the trial judge's refusal before the jury retired to deliberate. Allen v. State, 414 So.2d 989
(Ala.Crim.App. 1981), aff'd, 414 So.2d 993 (Ala. 1982).
The record shows that the appellant waited until immediatelyafter the jury retired to object and present his grounds. (R. 1064, 1067-68). Even had this issue been properly preserved, we would find the appellant's contentions to be without merit.
 "As a general rule the trial court is not required to give a jury charge on a lesser included offense unless, in its discretion, it concludes that the evidence presented would support the charge. Absent an abuse of that discretion, this court will not disturb a trial court's decision. Witherspoon v. State, 356 So.2d 743
(Ala.Cr.App. 1978); Gratton v. State, 456 So.2d 865 (Ala.Cr.App. 1984). As this court, per Presiding Judge Bowen, recently noted: *Page 299 
 'A judge may properly refuse to charge on lesser included offenses only where the only reasonable conclusion from the evidence is that the accused is guilty of the offense charged or no crime at all or where the requested charge would have a tendency to mislead or confuse the jury.' McKeithen v. State, 480 So.2d 36
(Ala.Cr.App. 1985). (Citation omitted)."Under Alabama law, '[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.' § 13A1-9(b), Code of Alabama (1975)." (footnote omitted)
Wilkerson v. State, 486 So.2d 509, 514 (Ala.Crim.App. 1986).
 "Under the provisions of § 13A-6-22(a), the offense of assault in the third degree is committed if a person does one of the following acts:
 '(1) With intent to cause physical injury to another person, he causes physical injury to any person; or
 '(2) He recklessly causes physical injury to another person; or
 '(3) With criminal negligence he causes physical injury to another person by means of a deadly weapon or a dangerous instrument; . . .' "
Wilkerson, supra at 513.
In the case at bar, it was uncontradicted that the appellant used a "deadly weapon", i.e. a .22 caliber revolver, in the commission of the charged offense. The appellant stated in his brief, "After Susan Collins left with the boys, Jackie turned off the lights, turned up the television and fired sixshots randomly in the direction of the adults." (emphasis added) (Brief of appellant p. 18).
"Although assault in the third degree includes an act whereby the defendant 'causes physical injury by means of a deadly weapon,' the Statute requires that the defendant act with 'criminal negligence.' Code 1975, § 13A-6-22(a)(3)." ExParte Williams, 484 So.2d 503, 505 (Ala. 1986). It is clear that at the very least the appellant fired the shots "in the direction of the adults" who were in a darkened room. Such conduct has been held to preclude a verdict of criminally negligent homicide. Lawson v. State, 476 So.2d 116
(Ala.Crim.App.), cert. quashed, 471 So.2d 122 (Ala. 1985).
There was, thus, no evidence which would support a charge on third degree assault. The trial judge did not abuse his discretion in refusing the appellant's request in that regard. See also Moore v. State, 447 So.2d 1321 (Ala.Crim.App. 1984).
The requested charges dealing with second degree assault were extremely lengthy and potentially confusing to the jury. In light of the already complex nature of the case and, in spite of the accuracy of the legal principles contained therein, we find that the trial judge committed no abuse of his discretion in refusing these charges. See Minnifield v. State,439 So.2d 753 (Ala.Crim.App. 1983). Section 12-16-13, Code of Alabama 1975.
 II
The appellant contends that the State failed to prove a prima facie case of first degree assault under both counts. He argues that the State failed to show that the two victims (Mrs. Mondell and Mr. Murray) sustained "serious physical injury" as defined in § 13A-1-2(9), Code of Alabama 1975.
It is clear that, in order to sustain a conviction of first degree assault, "serious physical injury" to the victim must be shown. Ala. Code § 13A-6-20 (1975); Goans v. State,465 So.2d 482 (Ala.Crim.App. 1985); Davis v. State,467 So.2d 265 (Ala.Crim.App. 1985). "Serious physical injury" is defined as "[p]hysical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." Ala. Code § 13A-1-2(9) (1975); Davis, supra at 266.
With respect to the injuries sustained by Mrs. Mondell, this court is of the opinion that the evidence presented at trial was sufficient to present a jury issue as to whether her injuries created a "substantial risk of death." Although Mrs. Mondell's *Page 300 
wound was, indeed, "superficial", as pointed out by the appellant, this fact does not preclude a finding that such an injury is a "serious" one. See Thomas v. State,418 So.2d 964 (Ala.Crim.App. 1982).
The evidence showed that Mrs. Mondell suffered extensive blood loss from a bullet which penetrated her scalp at one spot and exited at another. She sustained two "holes" in her scalp and had soft tissue swelling and blood under her scalp. Certainly the jury could have inferred from this evidence that, if left unattended, Mrs. Mondell could have suffered a loss of blood or other complications which may have caused her death. See Lawson v. State, 455 So.2d 99 (Ala.Crim.App. 1984) (evidence showed that victim would have bled to death had he been left unattended); White v. State, 448 So.2d 421
(Ala.Crim.App. 1983) (testimony of victim that she sustained two bullet holes in her head and stayed in the hospital for two hours under observation held sufficient to present question for jury).
With respect to the injuries sustained by Mr. Murray, however, we must reach a different conclusion. There was no evidence presented from which the jury could possibly have concluded that the abrasion he received from the bullet that grazed the top of his head amounted to "serious physical injury."
The victim himself testified that he "knew [he] wasn't hurt too bad" and that the ambulance attendant had told him "it was only a scratch." He received no medical treatment for the injury except for a tetanus shot which he received the following day.
We find that this lack of proof mandates a reversal of the appellant's conviction of the first degree assault of William "Donnie" Murray. Goans, supra (proof held insufficient where victim was shot with .22 caliber pistol in his collarbone, was treated and released at hospital immediately after injury and, testified that the pain was "not too bad");Davis, supra (victim was shot through the hand and in other arm where bullet remained lodged, was treated and released the same day, and experienced no further problems);Alvis v. State, 434 So.2d 859 (Ala.Crim.App. 1983) (victim was beaten about head and chest and had difficulty breathing and coughed up blood, but had no broken bones and was hospitalized two and one-half days merely for observation);Caine v. State, 453 So.2d 1081 (Ala.Crim.App. 1984) (victim's mouth was cut so badly he could not wear dentures or eat solid food for several days); Nelson v. State,462 So.2d 962 (Ala.Crim.App. 1984) (sole evidence consisted of victim's testimony that she was beaten with appellant's fists and the butt of a gun on her forehead and had received cuts and bruises, but did not receive stitches when she later consulted a doctor).
 III
The appellant contends that the trial court erred to reversal in consolidating for trial the indictments of the appellant and Francis Mondell, Jr. He argues that "the co-defendants were hostile, their defenses antagonistic, and the court failed to instruct the jury to individualize each defendant or to compartmentalize the evidence." We disagree.
In Holsemback v. State, 443 So.2d 1371, 1376
(Ala.Crim.App. 1983), this court held:
 "The consolidation of one defendant's case with that of another defendant is a matter of procedure. Hamilton v. North Carolina, 260 F. Supp. 632, 635 (E.D.N.C. 1966), affirmed, 382 F.2d 296 (4th Cir. 1967). Rules of joinder and consolidation are designed 'to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial.' Daley v. United States, 231 F.2d 123, 125
(1st Cir.), cert. denied, 351 U.S. 964, 76 S.Ct. 1028, 100 L.Ed. 1484 (1956). Joint trials are 'an accepted and even necessary aspect of our judicial system' and do not constitute a per se denial of due process. United States v. McLaurin, 557 F.2d 1064, 1074 (5th Cir. 1977).
". . . *Page 301 
 "The trial of multiple defendants carries 'substantial risks of manifest unfairness.' United States v. McLaurin, 557 F.2d 1064, 1074 (5th Cir. 1977). 'Inherent in every joint trial is, of necessity, some degree of bias. Only in the event such prejudice appears to be compelling does severance become warranted.' United States v. Marszalkowski, 669 F.2d 655, 660 (11th Cir. 1982).
 'Although the risk of prejudice, either from the jury's perception of evidentiary spillover or transference of guilt, exists in any joinder of offenses or defendants, the trial court weighs that risk against the interest of judicial economy. In reviewing improper denial of severance claims, courts of appeals require that the defendant demonstrate that the trial court abused its discretion by showing that the failure to sever resulted in compelling prejudice. . . .
 'The defendant bears a difficult burden in attempting to show that joinder of defendants or charges created substantial or compelling prejudice. The defendant fails to meet this burden if he merely asserts that acquittal is more likely if he is tried in a separate action or that much of the prosecution's evidence relates to only one of the codefendants.
 'Severance may be required when codefendants inconsistent defenses are prejudicial because they are mutually exclusive and irreconcilable or might mislead or confuse the jury. The defendant may demonstrate the level of antagonism requiring severance by showing that the jury had to disbelieve testimony offered in behalf of a codefendant in order to believe the core of evidence offered by the defendant.'
". . .
 "The test of whether a severance should be granted on the ground of prejudice to the defendants is whether under all the circumstances as a practical matter it is within the capacity of the jurors to follow the court's instructions and to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts. McLaurin, 557 F.2d at 1075. The trial judge must weigh the prejudice attendant to a joint trial against the interests of judicial economy. 'Of necessity, this balancing process is committed in the first instance to the sound discretion of the trial judge, and an appellate court will not substitute its own judgment for that of the lower court absent an affirmative showing that the lower court has abused its discretion.' McLaurin, 557 F.2d at 1075."
Holsemback, supra at pp. 1376-1378.
In the case at bar, both defendants were charged with the same offenses except that the appellant was also charged with robbery and Mondell was also charged with conspiracy. Each trial required the same evidence and witnesses and separate trials would have resulted in an unnecessary duplication of effort on the part of the State. Although the joinder of the defendants in this case undeniably added to the complexity of the case, we believe that the jury was capable of following the court's instructions and basing its decision solely upon this appellant's own acts. Holsemback, supra.
In Hill v. State, 481 So.2d 419 (Ala.Crim.App. 1985), and Herron v. State, 481 So.2d 425
(Ala.Crim.App. 1985), upon which the appellant relies in his brief, both defendants were denying the commission of a murder and asserting that the other was responsible. In the case at bar, the conflict between the defendants centered around the terms of the agreement which existed prior to the commission of the charged offenses. The evidence was uncontroverted that the appellant took the children from the Murray's home, fired the gun at the victims and delivered the children to Mondell in South Carolina. We, therefore, find no abuse of discretion with respect to the judge's actions in consolidating these cases for trial.
Furthermore, we note that the trial court informed this appellant before trial, during conference, that his objections to consolidation would be reconsidered if the appellant provided the trial judge with written authority supporting his position within seven *Page 302 
days. This was not done, and the consolidation order thereafter became final.
In addition, we note that, although some discussion of this issue is mentioned in the record, we find nothing to indicate that the appellant properly objected before trial and preserved this issue for our review.
Based on our finding that the evidence was insufficient to support the appellant's conviction of the first degree assault of William "Donnie" Murray, his conviction on that count is due to be and is, hereby, reversed. In light of the fact that the jury was not charged on the lesser included offenses of second and third degree assault, his conviction of the first degree assault of William "Donnie" Murray is due to be and is, hereby, rendered. Burks v. United States, 437 U.S. 1,98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); Ex Parte Beverly,497 So.2d 519, 525 (Ala. 1986) (explaining and overruling in partColeman v. State, 373 So.2d 1254 (Ala.Crim.App. 1979)). Cf. Edwards v. State, 452 So.2d 506
(Ala.Crim.App. 1983), aff'd, 452 So.2d 508 (Ala. 1984).
For the foregoing reasons, the appellant's remaining convictions are due to be and are, hereby, affirmed.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
All the Judges concur.
BOWEN, P.J., in result only.