SMITH, Justice,
for the Court:
John David Naples and Nicole Yvette Franks, (appellants), were indicted separately for felony child abuse by the Harrison County Grand Jury and on motion by the district attorney, were joined for trial purposes, even though their defenses were antagonistic. The jury convicted the appellants. Naples was sentenced to fifteen years with five years suspended and Franks was sentenced to fifteen years with three years suspended in the Mississippi Department of Corrections.
Aggrieved, Naples and Franks appeal to this Court, with Naples citing five issues and Franks citing two issues for our review. We find only the single, first impression issue of whether the trial court erred in joining Naples and Franks’ cases for trial purposes, worthy of discussion. After thorough consideration, we hold that the trial judge’s joinder of Naples and Franks’ cases for trial purposes after the return of separate indictments by the grand jury was without authority thus necessitating a reversal and remand for new separate trials.

FACTS

Nicole Yvette Franks and her boyfriend, John David Naples, were separately indicted for felony abuse of Franks’ two-year-old daughter, Amanda. Franks and Naples were living together while Franks’ husband was in the military and overseas. Naples testified that on February 11, 1991, at the International House of Pancakes, he and Franks took Amanda to the restroom when she began “acting up.” When Amanda returned, she had three or four red marks on her face. According to Naples, Franks stated that she had put her hand over Amanda’s mouth to keep her from screaming because Naples was beating Amanda.
Naples claimed that later Franks took Amanda outside to Naples’ van, and upon her return approximately twenty minutes later, Franks stated that, “I beat the hell out of that kid this time.... I hit her with the belt so hard, I was hitting her so hard that my arm got tired. Then I started punching her.” Naples claimed Franks’ previously injured and bandaged arm had started bleeding and that Franks told him, “I think I ripped my stitches when I was hitting Amanda.”
Franks, accompanied by Michelle Boyer, went back to the hospital around 2:30 a.m. on February 11th, leaving Naples alone with Amanda. Franks claimed nothing was wrong with Amanda when they had returned from the restaurant earlier that day. Franks claimed that when they returned home at approximately 6:00 a.m., Naples was asleep, but Amanda, with red marks on her face, was hiding behind a recliner and crying. Boyer testified that there was vomit all around the child. Franks testified that Amanda’s back was bruised and they saw “other bruises all over.”
Boyer testified further that Franks would not take the child to the hospital because Naples told her that they would take the child away from her. Boyer claimed that Franks told her that she had caused the bruises. Naples testified that while Boyer was bathing Amanda, Franks kept saying, “Oh, my God ... look what I did ... how could I do it.” Franks testified that she only meant that Naples had told her that she did *765 it, not that she had actually had caused the bruises. Franks testified that Naples physically kept her from leaving once and that she was afraid of him and did not attempt to leave again. Naples claimed Franks did not try to leave until Thursday morning and that he took Franks to her apartment. Once at the apartment, Boyer and other friends took Franks and Amanda to the police station and then to the hospital.
Dr. Edward Ford, Keesler emergency room physician, testified that Amanda had two large fractures in her liver, a bruise on her kidney, bruises around her neck, lesions on her ear caused by a cigarette burn, bite marks on her face and stomach and a partially healed bruise on the pancreas. There was bruising around the eyes which required a fair amount of force, usually caused by a blow to the eye. Dr. Ford farther stated that the child was anemic, suggesting internal bleeding, and that she was in renal failure when brought to the hospital. He opined that the bruises had occurred at different times, the latest being twelve to twenty-four hours prior to being brought to the hospital and closer to twelve hours.
Dr. Michael West, a dentist and the State’s expert witness in the field of teeth imprint identification and skin trauma testified that he examined Amanda and found four bite marks at her waist, two on her face and one on her left arm. Dr. West testified that the bite marks were moderate to severe, done to inflict pain and not in play as Naples testified. Dr. West stated that in his opinion the bite marks were consistent with the bite pattern of Naples.
The jury, having heard all of the evidence, convicted both appellants of felony child abuse.

DISCUSSION OF LAW

WHETHER THE TRIAL COURT ERRED IN JOINING NAPLES AND FRANKS’ CASES FOR TRIAL PURPOSES WHEN THEY WERE SEPARATELY INDICTED BY THE GRAND JURY?
In this issue of first impression, the appellants argue that the trial court erred in joining their cases for trial. The State admits in its brief that this Court has not determined this issue of joinder of criminal defendants absent a joint indictment. Appellants do not cite any eases by this Court on the issue, but do cite Rules 4.04 and 4.05 of the Uniform Criminal Rules of Circuit Court Practice as authority for the lower court lacking the power to join the two cases when separate indictments had been returned by a grand jury. Appellants argue that the grand jury has the sole power to return joint indictments.
Both indictments charged felony child abuse and were similar in that they charged events within the same general time frame and contained common charges of abuse. The lower court allowed the State to amend the indictments to state, “otherwise abuse” and to include the language, “serious bodily harm.”
The separate indictments were different in that Naples was charged with “biting” and Franks was charged with “burning” the child. The indictments did not allege for which portion of the common abuse each defendant was responsible. There was nothing in either indictment to connect the two individuals separately indicted, i.e., no charges of conspiracy, accessory or a common scheme or plan.
The Mississippi Uniform Criminal Rules of Circuit Court Practice follow the general rule concerning joinder as stated in 75 Am. Jur.2nd, § 157, as follows:
The general rule is that persons jointly charged with crime should be tried together, especially where the charges arise out of the same act or transaction or involve a common scheme or conspiracy unless the trial court determines that a defendant may be prejudiced by such joinder.
Unquestionably, under Rule 4.04 Miss. Unif.Crim.R.Cir.Ct.P., the circuit court has authority to grant a severance where there has been a joint indictment of two or more defendants. What is lacking in the rules however is authority for the trial court to join the'defendants for trial purposes where the grand jury has returned separate indictments.
*766 Rule 4.05, Uniform Criminal Rules of Circuit Court Practice (joinder), provides that two or more defendants may be charged in the same indictment upon which they are to be tried when: (1) Each defendant is charged with accountability for each offense charged; or (2) Each defendant is charged with conspiracy and some of the defendants are also charged with one or more offenses alleged to have been committed in furtherance of the conspiracy; or (3) Even if conspiracy is not charged and all defendants are not charged in each count, but it is alleged that the several offenses charged were part of a common scheme or plan.
There is nothing complex about Rule 4.05. Indictments are only returned by grand juries. Rule 4.05 mandates one of any three conditions must be met to join two or more defendants in an indictment. There is nothing in the separate indictments of Naples or Franks which suggests conspiracy, accessory, aiding or abetting, common scheme or plan. Simply put, the language of the rule clearly contemplates that as to joinder the sole authority lies with a grand jury to jointly return indictments against two or more individuals. The rule implies the lack of authority of circuit judges to join cases separately indicted because the very language “two or more defendants may be charges in the same indictment” is obviously referring to the sole authority of a grand jury to return indictments.
The State admits in its brief that the defenses of Naples and Franks were antagonistic, but maintains under the authority of Hawkins v. State, 538 So.2d 1204 (Miss. 1989), that this was not a case where in order to find one defendant guilty, the jury would have had to find the other defendant guilty. The State argues that in the case at bar, although both appellants tried to inculpate the other, the evidence showed that both, at separate times during the two-day time frame, had beaten, bitten and/or burned the child, and the jury didn’t believe one defendant over the other as they found both guilty. Hawkins, at 1207. However, Hawkins doesn’t stand for the proposition that a judge may join cases for trial purposes where the grand jury has returned separate indictments.
The State argues that the consolidation of the two cases was proper, cites from our sister state of Alabama, the case of Collins v. State, 508 So.2d 295 (Ala.Crim.App.1987), wherein the suggestion of error was argued in consolidation of co-defendants’ cases where defendants’ eases were hostile and their defenses antagonistic. In Collins, quoting Holsemback v. State, 443 So.2d 1371, 1376 (Ala.Crim.App.1983), the Alabama Criminal Appellate Court stated:
The consolidation of one defendant’s case with that of another defendant is a matter of procedure. Hamilton v. North Carolina, 260 F.Supp. 632, 635 (E.D.N.C. 1966), ajfd, 382 F.2d 296 (4th Cir.1967). Rules of joineder and consolidation are designed to ‘avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial.’ Daley v. United States, 231 F.2d 123,125 (1st Cir.), cert, denied, 351 U.S. 964, 76 S.Ct. 1028, 100 L.Ed. 1484 (1956). Joint trials are ‘an accepted and even necessary aspect of our judicial system’ and do not constitute a per se denial of due process. United States v. McLaurin, 557 F.2d 1064, 1074 (5th Cir. 1977).
Collins, 508 So.2d at 300.
The State thus argues that joinder is procedural and if the two cases could have been jointly indicted, then the trial court had the authority to join them for trial even though they were separately indicted by the grand jury. The State further argues Gloria Zafi-ro v. United States, 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), wherein the Court, quoting from the Court of Appeals opinion, noted generally, that “mutual antagonism ... and other ... characterizations of the effort of one defendant to shift the blame from himself to a co-defendant, neither control nor illuminate the question of severance.” Id. at 536-38,113 S.Ct. at 937.
The State argues that the jury in the case at bar was amply instructed on the burden of proof as to each defendant, citing instructions S — 1, S-2C, D-2 and D-3. The State maintains that as in Gloria Zafiro, juries are *767 presumed to follow their instructions. Stringer v. State, 477 So.2d 1335 (Miss.1985); Fairley v. State, 467 So.2d 894 (Miss.1985); Harris v. State, 537 So.2d 1325 (Miss.1989).
We note however, that the State’s reliance on the Alabama cases of Collins v. State and Holsemback v. State is misplaced. These eases are distinguishable from the case at bar. It is readily apparent that the Alabama rules allow for joinder and consolidation post indictment as granted by the Alabama Constitution and by the Alabama Legislature. In Holsemback, the court of appeals noted that:
A.R.Crim.P.Temp. 15.4(b) provides that if two or more defendants are joined for purposes of trial, proceedings thereafter shall be the same as if the prosecution initially had been under a single indictment, information or complaint.
Holsemback, 443 So.2d at 1374.
We hold that while this Court has the authority to adopt a rule of joinder with language similar to Alabama, the simple fact remains, we have not done so. Thus, while the Circuit Court of Harrison County may have had what the court considered as a good reason to join Naples and Franks’ cases, nevertheless, the lower court simply had no authority to do so where the grand jury returned separate indictments against appellants. The appellants’ issue of joinder is meritorious and we must reverse and remand for separate new trials.

CONCLUSION

The evidence against the appellants was overwhelming as to their individual guilt of this horrible crime of felony child abuse against 2 year old Amanda. There was no merit to any other issues raised by the appellants. While this Court has rule making authority, nevertheless, we have not adopted a rule of joinder post-indictment, therefore, the trial court was without authority to join Naples and Franks’ cases for trial purposes, especially in view of their antagonistic defenses. But for the trial court’s error of joinder of the two cases without authority at the urging of the district attorney, this case could have been affirmed.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE AND PRATHER, P.JJ., SULLIVAN, PITTMAN, BANKS and JAMES L. ROBERTS, Jr., JJ., concur.
McRAE, J., concurs in result only.