THOMAS, J.,
for the court.
¶ 1. Eric Rogers was found guilty of aggravated assault and sentenced to twelve years in the Mississippi State Penitentiary. Aggrieved he asserts the following on appeal:
I. THE COURT ERRED IN FAILING TO GRANT THE MOTION FOR DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT BASED ON THE INSUFFICIENCY OF THE EVIDENCE.
II. THE COURT ERRED IN REFUSING TO GRANT A NEW TRIAL AS THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
FACTS
¶ 2. On September 30, 2000, eighteen year old Benjie Keys, the victim in this case, met Eric Rogers at the Jitney Jungle on 16th Street in Laurel, Mississippi. Keys was meeting Rogers for the purpose of acquiring a stereo from Rogers’ cousin. Keys and Rogers had come to know each other through mutual employment at Howard Industries.
¶ 3. Upon meeting at the Jitney Jungle, Keys exited his vehicle and entered Rogers’ vehicle. The two traveled to Rogers’ home leaving Keys’ vehicle parked in the Jitney Jungle parking lot. When the two arrived at Rogers’ residence there was no stereo and no seller. After a few hours of waiting Keys decided he wanted to leave. He described that he was “catching on to” Rogers. Throughout the period of waiting for the seller of the stereo to arrive, Rogers had made some comments that led Keys to believe Rogers was a homosexual and had nefarious intentions for bringing Keys to his residence. Rogers played a *1279 “gyrue”[1] video and -Keys began to watch it while waiting for Rogers to decide to bring him back to his car. While Keys’ attention was directed at the video Rogers came from behind him and hit him over the head with a hammer. Keys, quite surprised, then picked himself off the floor and asked what happened. Rogers then punched him in the mouth. The two consecutive blows caused Keys to have a seizure. Rogers then picked Keys up and assisted him to a room where he fell asleep. Upon Keys regaining consciousness, Keys found that Rogers was watching him.
¶ 4. Rogers began to prepare a marijuana cigarette and offered some to Keys. Wflien Keys declined, Rogers insisted as he pointed a .38 caliber handgun at Keys’ forehead. After Keys obliged, Rogers handcuffed Keys’ left arm to an object in the room. Rogers then began to masturbate near Keys’ face. Keys attempted to push Rogers away. At this point Rogers prepared another marijuana cigarette.
¶ 5. At approximately 1:00 A.M. Rogers, armed with the .38 handgun, took Keys to a deer stand and told Keys to stay there. Keys objected and pleaded with Rogers to bring him home at which time Rogers decided to comply.
¶ 6. Rogers drove to the Jitney Jungle parking lot where Keys’ car was located. As they approached the parking lot, Keys became adamant about Rogers dropping him at the hospital. He explained that he was unable to drive due to poor vision. When the two arrived at the hospital Rogers began to question Keys as to whether he would tell anyone what occurred. Rogers asked Keys if they were still “cool.” As Rogers was talking to Keys, his car” was parked out of the hospital’s security camera’s line of sight. Keys then exited the vehicle and entered the hospital. His injuries included a fractured skull and two chipped teeth.
¶ 7. Rogers did not testify at trial but his videotaped statement was shown and admitted into evidence. The hammer which was used to fracture Keys’ skull was found in the trunk of Rogers’ vehicle.
I. DID THE COURT ERR IN FAILING TO GRANT THE MOTION FOR DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT BASED ON THE INSUFFICIENCY OF THE EVIDENCE?
¶ 8. Rogers contends the circuit court erred in not granting his motion for a directed verdict or in the alternative a judgment notwithstanding the verdict. Our supreme court stated the applicable standard of review in McClain v. State, 625 So.2d 774 (Miss.1993).
In appeals from an overruled motion for JNOV the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [the accused’s] guilt must be accepted as true. The prosecution must' be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury.' We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so consid- *1280 efed is such that reasonable and fair-minded jurors could only find the accused not guilty.
Id. at 778 (citations omitted). “If there is sufficient evidence to support a verdict of guilty, this Court will not reverse.” Meshell v. State, 506 So.2d 989, 990 (Miss.1987). See also Haymond v. State, 478 So.2d 297, 300 (Miss.1985); Fairley v. State, 467 So.2d 894, 902 (Miss.1985).
¶ 9. The evidence here was more than sufficient to support the verdict. Rogers bases his lack of sufficiency argument on the fact that Keys sat down and began watching a video, and that this just did not agree with Keys’ story of being scared and unwilling to be at Rogers’ residence. Rogers argues that the two were lovers and that Keys concocted this elaborate story to hide his sexuality from his family. He argues Keys admitted to hospital employees and to the jury that he did not remember what happened. The facts were a matter for the jury to determine and they did. This issue is without merit.
II. DID THE COURT ERR IN REFUSING TO GRANT A NEW TRIAL AS THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 10. Rogers argues that the trial court erred in not granting his motion for a new trial, or in the alternative, his motion for judgment notwithstanding the verdict. Rogers contends that Keys’ testimony is not credible based on Rogers’ description of their relationship as lovers.
¶ 11. The standard of review in determining whether a jury verdict is against the overwhelming weight of the evidence is well settled. “This Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial.” Dudley v. State, 719 So.2d 180, 182(¶ 8) (Miss.1998). On review, the State is given “the benefit of all favorable inferences that may reasonably be drawn from the evidence.” Griffin v. State, 607 So.2d 1197, 1201 (Miss.1992). “Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.” Dudley, 719 So.2d at 182. It has been established that “the jury is the judge of the weight and credibility of testimony and is free to accept or reject all or some of the testimony given by each witness.” Meshell v. State, 506 So.2d 989, 991 (Miss.1987). See also Hilliard v. State, 749 So.2d 1015, 1017(¶ 9) (Miss.1999); Lewis v. State, 580 So.2d 1279, 1288 (Miss.1991); Gandy v. State, 373 So.2d 1042, 1045 (Miss.1979). This Court may not make an assessment on the credibility of the trial witnesses as this task is one for the jury presiding over the matter. Kinzey v. State, 498 So.2d 814, 818 (Miss.1986). When this Court analyzes a jury’s verdict to determine whether it goes against the overwhelming weight of the evidence, we must keep in mind that the jury is the ultimate finder of fact. This Court does not have the task of re-weighing the facts in each case to, in effect, go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible. The law provides:
Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into finding of fact sufficient to support their verdict. That *1281 resolution results from the jurors hearing and observing the witnesses as they testify, augmented by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution.
Langston v. State, 791 So.2d 273, 280 (¶ 14) (Miss.Ct.App.2001) (citing Groseclose v. State, 440 So.2d 297, 300 (Miss.1983)). We see no basis for doubting the verdict. The trial judge did not abuse his discretion when he denied the motion for a new trial or judgement notwithstanding the verdict.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF JASPER COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JASPER COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.

. After extensive research, the term “gyrue” seems to be associated with some type of pomographic material.